**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2127
_____

MONICA RAAB,
Appellant

v.

CITY OF OCEAN CITY, NEW JERSEY,
a municipal corporation of the State of New Jersey;
OCEAN CITY POLICE DEPARTMENT;
OFFICER JESSIE RUCH, in his official and individual
capacity;
JOHN DOES (#1-25), Fictitious Designation
ABC CORPS. (#1-25), Fictitious Designation
_____

No. 15-2147
_____

MONICA RAAB

v.

CITY OF OCEAN CITY, NEW JERSEY,
a municipal corporation of the State of New Jersey;
OCEAN CITY POLICE DEPARTMENT;
OFFICER JESSIE SCOTT RUCH, in his official and
individual capacity
JOHN DOES (1-25), Fictitious Designation
ABC Corps, (#1-25), Fictitious Designation

City of Ocean City,
Appellant
_____

On Appeal from the United States District Court

for the District of New Jersey
(No. 1-11-cv-06818)
District Judge:  Hon. Robert B. Kugler

Argued:  March 17, 2016
_____

Before:  CHAGARES, RESTREPO and VAN
ANTWERPEN,[*] Circuit Judges.

(Filed: August 15, 2016)

Paul R. Rizzo, Esq. [ARGUED]
Nicholas F. Pompelio, Esq.
DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis,
Lehrer & Flaum, P.C.
15 Mountain Boulevard
Warren, NJ 07059
        Attorneys for Appellant/Cross-Appellee Monica Raab

A. Michael Barker, Esq. [ARGUED]
Vanessa E. James, Esq.
Barker, Gelfand & James, P.C.
210 New Road
Linwood Greene, Suite 12
Linwood, NJ 08221
        Attorneys for Appellees/Cross-Appellants City of
Ocean City and Ocean City Police Department

Thomas B. Reynolds, Esq. [ARGUED]
John J. Bannan, Esq.
Reynolds & Horn, P.C.
750 Route 73 South, Suite 202A
Marlton, NJ 08053
        Attorneys for Appellee Jessie Ruch

---

[*] The Honorable Franklin Van Antwerpen participated in the decision in this case, but died before the opinion was filed. This opinion is filed by a quorum of the court.  See 28 U.S.C. § 46; Third Circuit I.O.P. 12.1(b).

———————

OPINION

———————

CHAGARES, Circuit Judge.

Plaintiff Monica Raab and defendant City of Ocean City, New Jersey ("Ocean City") both appeal the District Court's denial of their motions for attorney's fees. Raab argues that she is a "prevailing plaintiff," for purposes of attorney's fee eligibility under 42 U.S.C. § 1988, in her civil suit against defendant Ocean City police officer Jessie Ruch. At issue in Raab's appeal is whether a settling plaintiff in a civil rights action can be a "prevailing party" where the district court sua sponte entered a dismissal order incorporating and retaining jurisdiction over the settlement agreement. For the reasons that follow, we hold that a plaintiff can be a "prevailing party" in such circumstances. Accordingly, we will reverse in part the District Court's order and remand for proceedings consistent with this opinion.

At issue in Ocean City's cross-appeal is whether the District Court abused its discretion in denying attorney's fees to a prevailing defendant, when the District Court had previously granted summary judgment in the defendant's favor. For the reasons that follow, we hold that the District Court did not abuse its discretion, and we will affirm the District Court's denial of Ocean City's motion for attorney's fees.

I.

In November 2011, Raab filed a civil complaint against police officer Ruch and his employer, Ocean City. Raab asserted numerous federal claims pursuant to 42 U.S.C. § 1983, as well as similar state law causes of action, which all stemmed from an incident in which Ruch detained Raab on May 10, 2010.[1] On that day, Ruch stopped his patrol car

_____

[1] The causes of action alleged in Raab's initial complaint included federal and state claims of false arrest, excessive force, unlawful search, unreasonable seizure, supervisory

3

outside of Raab's residence to investigate a trailer that had been parked on the street for about a month and had no license plate. Ruch believed that the trailer was abandoned and contacted police dispatch to request that it be towed. Shortly thereafter, Raab went outside, spoke with Ruch, and informed him that the trailer belonged to her brother-in-law and that she would move the trailer into her driveway. Ruch told her not to move the trailer, but she still tried. After Raab was unsuccessful in her attempt to move the trailer, she went inside her house to call her husband. She then returned to the driveway and handed the phone to Ruch, who indicated that the trailer would not be towed if it was moved before a tow truck arrived. At that point, another man drove by the house and offered to help move the trailer. With his help, the trailer was moved into the driveway.

Ruch then asked Raab for her name. The parties dispute whether Raab provided her name, and they dispute the resulting physical interaction. Raab alleges that she responded "we are the Raabs," but that Ruch then grabbed her arm, handcuffed her, and threw her to the ground. Appendix ("App.") 51-52. She alleges that, while she was on the ground, Ruch repeatedly pulled and twisted the handcuffs, causing her arm to be pulled in different directions and her head to hit the ground several times. Ruch disputes Raab's version of events. He claims that Raab refused to tell him her name, cursed at him, and then pushed him with her forearm. Ruch alleges that he then grabbed Raab by the arm, at which point she started slapping his hand and subsequently fell to the ground on her back. See App. 52. Ruch alleges that Raab, while on the ground, started flailing her legs. Id. Ruch indicated that he believed Raab was having a "psychological episode," so he decided to detain her and call for his supervisor. Id. When the supervisor arrived, the supervisor called an ambulance for Raab and told Ruch to remove the handcuffs. Later that day, Raab went to her primary care doctor, where she was diagnosed with various injuries.

liability, failure to train, negligent supervision, assault and battery, and negligent infliction of emotional distress.

4

Notably, approximately one month prior to the May 10 incident, Ruch had received a negative performance notice for failing to detain a suspect in an unrelated incident. The performance notice served as a "training tool" for Ruch, who indicated that this performance notice was "in the back of [his] mind" during the altercation with Raab. App. 7.

Both Ruch and Ocean City filed motions for summary judgment. The District Court granted in part and denied in part Ruch's motion for summary judgment. The surviving claims against Ruch included federal and state claims for excessive force, a state claim for assault and battery, and a request for punitive damages. The District Court also granted summary judgment in favor of Ocean City on all counts, having found that Raab could not establish "'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents; and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate are present'" required to succeed on a municipal liability claim. App. 68 (quoting Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997)). Specifically, "[n]o reasonable jury could find that because Officer Ruch was previously told that he should have arrested a domestic violence suspect when probable cause existed to do so, his supervisors communicated a 'message of approval' to tackle citizens to the ground every time any suspect is arrested." App. 70.

Raab and Ruch requested a settlement conference with the Magistrate Judge to whom the case was referred for certain pre-trial proceedings. At a November 25, 2014 settlement conference held by the Magistrate Judge, Raab and Ruch agreed to resolve all outstanding claims for the total sum of $150,000, exclusive of attorney's fees and costs. The parties agreed that the issue of attorney's fees would be determined later by the District Court. Shortly thereafter, Raab filed her motion for attorney's fees pursuant to 42 U.S.C. § 1988. Ocean City also filed a fee application with the District Court.

Prior to deciding Raab's and Ocean City's motions for attorney's fees, the District Court entered an Order of

Dismissal on January 21, 2015. The order dismissed the action without costs and provided: "The terms of the settlement agreement are incorporated herein by reference and the Court shall retain jurisdiction over such agreement." App. 230. None of the parties objected to or appealed the District Court's dismissal order. The order did not include the actual terms of the settlement, and the District Court later indicated that it had not seen the settlement terms when it issued the dismissal order. See App. 8. A few days later, the parties filed a stipulation of dismissal with prejudice, which simply stated that the parties have "stipulated and agreed that the same be and it is hereby dismissed, with prejudice, exclusive of the pending motions for attorney fees." App. 231.[2]

On April 6, 2015, the District Court denied both Raab's and Ocean City's motions for attorney's fees. The District Court held that Raab was not a "prevailing party," as required by 42 U.S.C. § 1988. As to Ocean City, the District Court held that, although Ocean City was a prevailing defendant, the city had not demonstrated that Raab's action was frivolous, unreasonable, or without foundation to justify the awarding of fees. Both Raab and Ocean City timely appealed the denials of their fee applications.

II.[3]

We review a district court's denial of attorney's fees for abuse of discretion. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006). "An abuse of discretion occurs when a district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper

---

[2] Raab's counsel signed and dated the stipulation as of January 20, 2015. Ruch's counsel signed and dated the stipulation as of January 23, 2015. The stipulation was filed and entered with the District Court on February 2, 2015.

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and we have jurisdiction pursuant to 28 U.S.C. § 1291 to review the final decision of the District Court.

6

application of law to fact." Id. (quotation marks omitted). However, if the fee application was denied based on the district court's conclusions on questions of law, our review is plenary. Id.

III.

The first question before us is whether Raab is a "prevailing party" in her action against Ruch. Under 42 U.S.C. § 1988(b), courts may, in their discretion, grant a "reasonable attorney's fee" to a "prevailing party" in certain federal actions, including those proceeding under 42 U.S.C. § 1983.

The District Court held that Raab was not a "prevailing party," and accordingly did not award attorney's fees. In reaching this holding, the District Court indicated that "a party may only 'prevail' by obtaining either a judgment or a court-ordered consent decree." App. 5. The District Court then determined that Raab had obtained neither:

> Plaintiff has not obtained a judgment on the merits; rather, Plaintiff and Officer Ruch entered into a private settlement agreement. Only "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." Buckhannon [Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.], 532 U.S. [598, 604 (2001)] (internal citations omitted). While "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees," id., that is not the situation that presents itself here, as no consent decree was entered to enforce the settlement agreement.

App. 7-8. We disagree.

The Supreme Court has set forth some useful guideposts for determining whether a plaintiff is a "prevailing party" for purposes of fee-shifting statutes. In Buckhannon,

7

the Court distilled the following threshold inquiries under section 1988: (1) whether there is a "'material alteration of the legal relationship of the parties,'" and (2) whether that material alteration is "judicially sanctioned." 532 U.S. at 604-05 (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989)). We have observed generally that "[t]he Supreme Court has given a 'generous formulation' to the term 'prevailing party.'" Truesdell v. Phila. Housing Auth., 290 F.3d 159, 163 (3d Cir. 2002) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also Cnty. of Morris v. Nationalist Movement, 273 F.3d 527, 535 (3d Cir. 2001) (holding that normally, a "prevailing plaintiff should recover an award of attorney's fees absent special circumstances").

A.

Regarding the first inquiry, a plaintiff must "receive at least some relief on the merits of his claim before he can be said to prevail." Hewitt v. Helms, 482 U.S. 755, 760 (1987). This "inquiry does not turn on the magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992). Indeed, the Court has held that even an award of nominal damages will satisfy this test. Buckhannon, 532 U.S. at 604 (citing Farrar, 506 U.S. 103). As we have noted, "when . . . a material alteration in the legal relationship of the parties has occurred, 'the degree of the plaintiff's overall success goes to the reasonableness of the award . . . not to the availability of a fee award vel non.'" Truesdell, 290 F.3d at 166 (quoting Tex. State Teachers Ass'n, 489 U.S. at 793).

Although an award of relief may be issued by a court following consideration of the merits, "[t]he fact that [a plaintiff] prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." Maher v. Gagne, 448 U.S. 122, 129 (1980). We have recognized, however, that "interim" relief — such a obtaining a preliminary injunction to maintain the status quo — that is not in some way merit-based will not confer prevailing party status. See, e.g., John T. ex rel. Paul T. v. Del. Cnty.

8

Intermediate Unit, 318 F.3d 545, 558 (3d Cir. 2003); J.O. v. Orange Twp. Bd. of Ed., 287 F.3d 267, 272-74 (3d Cir. 2002).

This case involves the payment of $150,000 from Ruch to Raab pursuant to a settlement agreement that effected a final resolution of Raab's case. This indisputably constituted a material alteration of the legal relationship between Ruch and Raab.

B.

Regarding the second inquiry, the material alteration of the legal relationship between the parties requires a "judicial imprimatur on the change." Buckhannon, 532 U.S. at 605; see also CRST Van Expedited v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016) ("This change must be marked by judicial imprimatur." (quotation marks omitted)). Key to this determination is whether the change is enforceable or "judicially sanctioned" by the court. See Buckhannon, 532 U.S. at 604-05; Farrar, 506 U.S. at 111; John T., 318 F.3d at 560; see also Buckhannon, 532 U.S. at 622 (acknowledging that a party cannot be considered prevailing "unless there has been an enforceable alteration of the legal relationship of the parties" (quotation marks omitted) (Scalia, J., concurring)). The Court in Buckhannon offered two "examples" meeting this standard: "enforceable judgments on the merits" and "settlement agreements enforced through a consent decree." Id. at 604-05. However, the Court in Buckhannon determined that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change" between the legal relationship of the parties. Id. at 605.

The District Court held that only a judgment or consent decree — not the "private settlement agreement" the parties entered into — could constitute the basis to permit Raab to be a prevailing party. App. 7-8. While settlement agreements reached "through negotiations out of court" alone may lack the necessary judicial imprimatur, John T., 318 F.3d at 560, the facts of this case differ.

9

A settling plaintiff may be entitled to attorney's fees if the district court has ancillary jurisdiction to enforce the terms of a settlement agreement. The Supreme Court has recognized that generally, a federal district court does not have jurisdiction to enforce a settlement agreement, even though the original dispute may have been before the court. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380-81 (1994). However, a district court will have ancillary jurisdiction over a settlement agreement, permitting the court to enforce the agreement, when "the terms of the settlement agreement had been made part of the order of dismissal — either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Id. at 381. The Court in Buckhannon acknowledged, as a result, that "federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." 532 U.S. at 604 n.7. Accordingly, a district court's retaining ancillary jurisdiction over the settlement agreement or incorporating the terms of the settlement agreement in the order of dismissal confers the judicial imprimatur that is required for a plaintiff to become a prevailing party under section 1988. See Truesdell, 290 F.3d at 163-65 (holding that a settling plaintiff was a prevailing party when the court order contained "mandatory language," was entitled "Order," "b[ore] the signature of the District Court judge," and gave the plaintiff "the right to request judicial enforcement of the settlement").

Turning to the case before us, we note that the District Court's dismissal order both explicitly incorporated the terms of the settlement agreement and retained jurisdiction to enforce the agreement. The order provided: "The terms of the settlement agreement are incorporated herein by reference and the Court shall retain jurisdiction over such agreement." App. 230. We therefore hold that the settlement agreement had the necessary judicial imprimatur to confer prevailing party status.

Ruch urges us to disregard the explicit language incorporating the settlement terms because the District Court did not actually see the settlement agreement prior to issuing

10

its dismissal order. This argument is unavailing. Although it may be a good practice for a district court to examine a settlement agreement prior to incorporating its terms, Ruch points to no case law requiring a district court to do so in order to effectively retain jurisdiction over a settlement. In a similar case, the Court of Appeals for the Second Circuit held that a district court's retention of jurisdiction over the enforcement of a settlement provided "sufficient judicial sanction to convey prevailing party status on plaintiffs," even though the district court had not "scrutinize[d] the settlement's fairness or conduct[ed] any review of the terms of the Agreement before endorsing the stipulation dismissing the suit." Roberson v. Giuliani, 346 F.3d 75, 80, 84 (2d Cir. 2003). The circumstances here are also vastly different from those we considered in John T. There, we held that the plaintiff's relief was not "judicially sanctioned" when the parties developed a mutual resolution "through negotiations out of court," and where there was no other form of judicial sanction over the parties' mutually agreed upon resolution. 318 F.3d at 560. But here, the operative order dismissing the case contains explicit language incorporating the settlement terms and retaining jurisdiction in the District Court — providing the requisite "judicial sanction" over the settlement agreement.[4]

Ruch also urges us to ignore the plain language in the District Court's dismissal order stating that the settlement terms were incorporated. Instead, Ruch argues that we should defer to the District Court's later interpretation of its dismissal order. See Ruch Br. 16-17. In its order denying attorney's fees, the District Court noted that "the terms of the settlement were not actually included" and that the court "did not facilitate the settlement, has never seen the settlement agreement, nor was it aware of any terms contained within the agreement when the Order was issued." App. 8. However, the case relied on by Ruch — United States v. Spallone, 399

---

[4] We also note that, unlike in John T., the settlement occurred with the help of an active magistrate judge in the federal district courthouse in Camden, New Jersey. This likely gave the District Court some assurance that the terms of the agreement were appropriate to become part of a court order.

11

F.3d 415, 423 (2d Cir. 2005) — concerns a district court's construction of an "ambiguity in his own words." Here, the dismissal order was unambiguous: by its own terms it incorporated the settlement terms and retained jurisdiction.

Ruch next argues that the retention of jurisdiction clause is invalid because the parties did not consent to ancillary jurisdiction over later enforcement of the settlement. Ruch Br. 23-25 (citing Am. Disability Ass'n, Inc. v. Chmielarz, 289 F.3d 1315, 1318 (11th Cir. 2002) (noting that district court retained jurisdiction to enforce the settlement at the request of the parties), and Roberson, 346 F.3d at 83 (noting that its holding that a settlement agreement was judicially sanctioned was "strengthened" by clause in settlement providing that it would not become effective if order of discontinuance did not include a provision retaining jurisdiction over enforcement)). However, neither of the cases cited by Ruch hold that a district court can only retain jurisdiction of the enforcement of a settlement if the parties include a provision stating as such in their settlement agreement or otherwise consent to the court's jurisdiction. We reject Ruch's argument and hold that a district court may sua sponte retain ancillary jurisdiction in the circumstances of this case.[5]

_____

[5] As discussed infra, Federal Rule of Civil Procedure 41(a)(2) authorized the District Court to enter the dismissal order with the provisions incorporating the settlement agreement and retaining ancillary jurisdiction. Ruch, however, claims that the District Court was "wholly without legal authority," Ruch Br. 32, to include these provisions because District of New Jersey Local Civil Rule 41.1(b) "does not contain language which would allow a trial judge to add conditions or terms to the Order of Dismissal, such as the retention of jurisdiction over the settlement language." Id. Local Civil Rule 41.1(b) provides:

> When a case has been settled, counsel shall promptly notify the Clerk and the Court, thereafter confirming the same in writing. Within 21 days of such notification, counsel shall file all

> papers necessary to terminate the case. Upon failure of counsel to do so, the Clerk shall prepare an order for submission to the Court dismissing the action, without costs, and without prejudice to the right to reopen the action within 60 days upon good cause shown if the settlement is not consummated.

L. Civ. R. 41.1(b) (D.N.J.).

We reject Ruch's argument for at least four reasons. First, Ruch provides no case law to support his argument. The District Court of New Jersey has instead confirmed that the decision whether "to retain ancillary jurisdiction over the settlement agreement is discretionary" in these circumstances. Brass Smith, LLC v. RPI Indus., Inc., 827 F. Supp. 2d 377, 381 (D.N.J. 2011); see also id. ("[A] court is under no obligation to retain jurisdiction over a settlement agreement, but may do so if it chooses."); Wright v. Prudential Ins. Co. of Am., 285 F. Supp. 2d 515, 522 n.17 (D.N.J. 2003) ("The exercise of [ancillary] jurisdiction to enforce its own order is discretionary; the court [is] under no obligation to reserve [jurisdiction] in the first place."). Second, Local Rule 41.1(b) does not, by its terms, restrict or modify the court's authority in any way. The rule merely supplements Federal Rule of Civil Procedure 41(a), inter alia, to create a procedure for attorneys to notify the court when a case settles "as soon as possible so that the Court will not waste further effort on the case and so that it can readjust its calendar." Allyn Z. Lite, N.J. Federal Practice Rules, Rule 41.1(b), cmt. 3 (2015). Third, Ruch's argument presumes that a local rule may override the Federal Rules of Civil Procedure — which is not possible. See Frazier v. Heebe, 482 U.S. 641, 645-46 (1987); see also 28 U.S.C. § 2071(a); N.J. L. Civ. R. 1.1 (noting that the New Jersey Local Civil Rules "supplement the Federal Rules of Civil Procedure . . . and are applicable in all proceedings when not inconsistent therewith"). Fourth, we note that Ruch did not object to the District Court's dismissal order, which was entered on January 21, 2015. Nor did he

When case law does mention parties' consent to ancillary jurisdiction, it is often in the context of Federal Rule of Civil Procedure 41(a)(1)(A)(ii) voluntary dismissals. Under Rule 41(a)(1)(A)(ii), a plaintiff can dismiss an action without a court order by filing "a stipulation of dismissal signed by all parties who have appeared." See State Nat'l Ins. Co. v. Cnty. of Camden, -- F.3d --, --, 2016 WL 2990975, at *5 (3d Cir. 2016). "'[A]ny action by the district court after the filing of [the Stipulation of Dismissal] can have no force or effect because the matter has already been dismissed.'" Id. (alterations in original) (quoting SmallBizPros, Inc. v. MacDonald, 618 F.3d 458, 463 (5th Cir. 2010)). But here, as the dismissal order was filed before the stipulated dismissal, Rule 41(a)(1)(A)(ii) does not govern. Instead, as the Supreme Court has indicated, district courts may retain jurisdiction without the parties' consent in Rule 41(a)(2) dismissal orders:

> When the dismissal is pursuant to Federal Rule of Civil Procedure 41(a)(2), which specifies that the action "shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper," the parties' compliance with the terms of the settlement contract (or the court's "retention of jurisdiction" over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order. Even when, as occurred here, the dismissal is pursuant to Rule 41(a)(1)(ii) (which does not by its terms empower a district court to attach conditions to the parties' stipulation of dismissal) we think the court is authorized to embody the settlement contract in its

file a motion to reconsider or appeal that order. See Raab Reply Br. 13. Thus, no challenge to the dismissal order itself is properly before us.

14

> dismissal order (or, what has the
> same effect, retain jurisdiction
> over the settlement contract) if the
> parties agree.

Kokkonen, 511 U.S. at 381-82. The Supreme Court in Kokkonen made clear that, for court dismissals made pursuant to Federal Rule of Civil Procedure 41(a)(2), a district court may, in its discretion, "attach conditions to the parties' stipulation of dismissal" — including the retention of jurisdiction over the settlement agreement. Id. Thus, the absence of a settlement term providing the parties' consent does not render unenforceable the District Court's retention of jurisdiction in a dismissal order under Rule 41(a)(2).

\* \* \* \* \*

We conclude that Raab was a prevailing party under section 1988. Therefore, we will reverse the District Court's order denying Raab attorney's fees, and remand so that the District Court can determine, within its discretion, the appropriate amount of fees to which Raab's counsel is entitled.

IV.

We turn to defendant Ocean City's cross-appeal challenging the District Court's denial of its motion for attorney's fees. It is beyond dispute that Ocean City was a "prevailing party," as none of the claims asserted against the city survived the District Court's order granting Ocean City's motion for summary judgment.

Although a prevailing party can be either a plaintiff or a defendant, "the standard for awarding attorney's fees to prevailing defendants is more stringent than that for awarding fees to prevailing plaintiffs." Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 157-58 (3d Cir. 2001). Even when a defendant is a prevailing party in a section 1983 action, he may recover attorney's fees "only if the District Court finds that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes v. Rowe, 449 U.S. 5, 14

15

(1980) (quotation marks omitted); accord CRST Van Expedited, Inc. v. E.E.O.C., 136 S. Ct. 1642, 1646 (2016) ("When a defendant is the prevailing party on a civil rights claim, the Court has held, district courts may award attorney's fees if the plaintiff's 'claim was frivolous, unreasonable, or groundless,' or if 'the plaintiff continued to litigate after it clearly became so.'" (quoting Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422 (1978))). Attorney's fees for prevailing defendants under this standard are "not routine, but are to be only sparingly awarded." Quiroga v. Hasbro, Inc., 934 F.2d 497, 503 (3d Cir. 1991). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Hughes, 449 U.S. at 14. Even if a plaintiff's allegations are ultimately "legally insufficient to require a trial," that alone is not enough to render the plaintiff's cause of action "groundless" or "without foundation." Id. at 15-16.[6]

On appeal, Ocean City contends that the District Court did not use the proper analysis for deciding its fee application and abused its discretion in denying its fee application. Ocean City argues that the District Court failed to address properly the argument that Raab's claims lacked a factual

---

[6] In the Title VII context — where an analogous "frivolous, unreasonable, or without foundation" standard is employed — we have indicated that when determining whether an award of counsel fees to a prevailing defendant is appropriate, "courts should consider several factors including (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. 1997) (quotation marks omitted). Other factors that a court may consider are "whether the question in issue was one of first impression requiring judicial resolution," and whether "the controversy is based sufficiently upon a real threat of injury to the plaintiff." Barnes Found., 242 F.3d at 158. "These considerations, however, are merely guidelines, not strict rules; thus determinations regarding frivolity are to be made on a case-by-case basis." Id. (quotation and alteration marks omitted).

foundation, and claims that the District Court only focused on "reasonableness" and whether the claims were "frivolous."

In denying Ocean City's fee application, the District Court explicitly held that Raab's claims were not frivolous or without foundation, and were reasonable. App. 6-7. The District Court, accordingly, employed the correct legal standard to evaluate Ocean City's fee application. Nor did the District Court abuse its discretion in holding that, at the time Raab filed her complaint, it was not unreasonable for Raab to allege inadequate training and supervision by Ocean City. Deficient training or supervision may form the basis for section 1983 liability against a municipality when "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents; and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate are present." Bonenberger, 132 F.3d at 25 (quotation marks omitted). In reaching its conclusion, the District Court determined that Raab had undisputed evidence that one month prior to Raab's arrest, Ruch had been issued a "Performance Notice" wherein "he was counseled by his supervisors for his lack of assertiveness and inability to take command in handling an unrelated incident." App. 7. The District Court noted that Ruch had admitted that this counseling was "in the back of [his] mind" during the altercation with Raab. Id. (quotation marks omitted). The court reasoned that such evidence made it "not unreasonable for [Raab] to argue [municipal liability claims] based upon these facts." Id. Further, the District Court noted that Ocean City and Ruch made a joint settlement offer to Raab, which "further supports the reasonableness of the claims asserted against Ocean City." App. 7 n.1; see E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 751 (3d Cir. 1997) (indicating that whether "the defendant offered to settle" is a factor for determining whether an award of attorney's fees to a prevailing defendant is appropriate).

We hold that the District Court acted within its discretion in finding that Raab's claims were not frivolous, unreasonable, or without foundation. The District Court's decision did not rest "upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law

17

to fact." <u>Clementon Bd. of Educ.</u>, 442 F.3d at 852 (quotation marks omitted). Therefore, we will affirm the District Court's denial of Ocean City's motion for attorney's fees.

V.

For the foregoing reasons, we will reverse the District Court's order denying Raab's motion for attorney's fees and will remand to the District Court for proceedings consistent with this opinion. We will affirm, however, the District Court's order denying Ocean City's motion for attorney's fees.