**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2465
_____

M.R.; J.R.,
Parents of Minor Child E.R.,
                                        Appellants
v.

RIDLEY SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Civil Action No. 2:11-cv-02235)
Honorable Mitchell S. Goldberg, U.S. District Judge
_____

Argued: March 30, 2017

Before: VANASKIE, KRAUSE, and RESTREPO, *Circuit
Judges*

(Opinion Filed:   August 22, 2017)

Alan L. Yatvin (Argued)
Popper & Yatvin
230 South Broad Street, Suite 503
Philadelphia, PA 19102

*Attorney for Plaintiff-Appellants M.R. and J.R.*

John Francis X. Reilly (Argued)
230 North Monroe Street
Media, PA 19063

*Attorney for Defendant-Appellee Ridley School District*

————————————

OPINION OF THE COURT

————————————

KRAUSE, *Circuit Judge*.

Under the Individuals with Disabilities Education Act, a parent of a child with a disability can bring administrative and judicial proceedings to challenge a school district's alleged violations of the Act, and, if the parent emerges as "a prevailing party," the parent is then eligible for an award of attorneys' fees. 20 U.S.C. § 1415(i)(3)(B). This case presents the question whether a fee award is available to parents who, after unsuccessfully challenging a school district's proposed educational placement for their child, later obtain a court order requiring the school district to reimburse them for the costs of the child's "stay put" placement—the "then-current educational placement" in which the Act permitted the child to remain while administrative and

2

judicial proceedings were pending. *Id.* § 1415(j). We answer this question in the affirmative and conclude, consistent with the Act's text and with the opinions of this Court and the other Courts of Appeals, that a court-ordered award of retrospective and compensatory relief, even if awarded under the Act's "stay put" provision, 20 U.S.C. § 1415(j), confers "prevailing party" status. We therefore will reverse the District Court's denial of attorneys' fees and remand for proceedings consistent with this opinion.

## I.    Background

This case pertains to a long-running dispute between Appellants, the parents of E.R., and Appellee, the Ridley School District, concerning E.R.'s schooling and Ridley's obligations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482. Before turning to the details of that dispute, we briefly review the statutory framework from which it arose.

### A.    Statutory Context

The IDEA is a comprehensive statutory scheme enacted "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). To that end, the Act allocates federal dollars to assist the states' educational services for children with disabilities. *Id.* § 1411(a)(1). In return, recipient states must provide a "free appropriate public education" to children with disabilities residing in their states, an "individualized education program" ("IEP") for each child with a disability, and specified procedural safeguards for children with disabilities and their parents. *Id.* § 1412(a)(1), (4), (6).

3

One consequence of the IDEA's requirements is that school districts must sometimes reimburse parents of children with disabilities for educational expenses made on their children's behalf. Specifically, because an IEP must account for a child's "strengths," the parents' "concerns" about the child's education, the child's most recent disability evaluation, and the child's "academic, developmental, and functional needs," *id.* § 1414(d)(3)(A), an IEP that meets the Act's requirements may require the child to be placed in a private school. If so, the IDEA obliges the school district, in providing the child with a "free appropriate public education," to reimburse the parents for the child's private-school tuition and related expenses. *See Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 363, 369-70 (1985); *see also* 20 U.S.C. §§ 1412(a)(10)(B), 1415(i)(2)(C).

This reimbursement obligation exists not only when the school district and the parents agree that the child should be in private school but also sometimes when they do not. *See generally* 20 U.S.C. § 1412(a)(10)(C). For example, even when parents place a child in a private-school setting to which the school district will not consent, the school district remains liable for the private-school costs if an adjudicator later determines that the private school was the appropriate educational placement for the child. *See Sch. Comm.*, 471 U.S. at 372-74. And even if, on appeal, a court were ultimately to determine that the private school was not the appropriate educational placement, the child is entitled to "stay put" in the "then-current [private] educational placement" during the pendency of the appeal. 20 U.S.C. § 1415(j). In that circumstance, as long as the child is twenty-one years of age or younger, *see* 20 U.S.C. § 1412(a)(1)(A); *Lauren W. ex rel. Jean W. v. DeFlaminis*,

4

480 F.3d 259, 272 (3d Cir. 2007), the school district must continue reimbursing the child's parents until the point, if ever, that the "proceedings," including on appeal, resolve in the school district's favor, *M.R. v. Ridley Sch. Dist. (Ridley IV)*, 744 F.3d 112, 117-19, 124-28 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(j)).

School districts have one more economic reason to adhere to the Act's requirements: although under the "American Rule" parties typically pay their own attorneys' fees, district courts can order school districts that lose IDEA disputes to pay "reasonable attorneys' fees" to "a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B); *P.N. ex rel. M.W. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006). The scope of school districts' potential liability for fee awards is the subject of this appeal, the facts of which we recount below.

## B. Factual and Procedural Background

### 1. IEP Litigation

E.R. attended an elementary school in the Ridley School District for kindergarten and first grade. *Ridley School District v. M.R. (Ridley II)*, 680 F.3d 260, 264 (3d Cir. 2012). After identifying E.R.'s learning disabilities during her first-grade year, Ridley and E.R.'s parents agreed to an IEP for the remaining months of that academic year. *Id.* at 265-66. The parties' IEP negotiations for second grade, however, were unsuccessful because they disagreed about what reading aids would be appropriate for E.R., so E.R.'s parents opted to enroll her in a private school and to file an administrative complaint accusing Ridley of "fail[ing] to develop an appropriate IEP." *Id.* at 267-77.

5

The administrative hearing officer agreed with E.R.'s parents and, in a report dated April 21, 2009, opined that Ridley's proposed IEPs "were inadequate and therefore denied E.R. a free appropriate public education." *Id.* at 267 (internal quotation marks omitted). This decision in the parents' favor during the administrative review process equated to "an agreement between the State and the parents" and rendered E.R.'s private-school placement her "then-current educational placement" for purposes of the IDEA's "stay put" provision. *Ridley IV*, 744 F.3d at 119 (quoting 20 U.S.C. § 1415(j)). Beginning at that point, therefore, Ridley was obliged to reimburse E.R.'s parents for their private-school costs. *See id.*

But the administrative ruling in E.R.'s parents' favor did not fare well in the District Court or on appeal to this Court. After Ridley petitioned for review of the administrative hearing officer's decision, the District Court rejected the parents' contention that the challenged IEPs were "not based on peer-reviewed research" and were therefore deficient, *Ridley Sch. Dist. v. M.R. (Ridley I)*, No. 09-2503, 2011 WL 499966, at \*12-15 (E.D. Pa. Feb. 14, 2011), and we affirmed, explaining that "although schools should strive to base a student's specially designed instruction on peer-reviewed research to the maximum extent possible, the student's IEP team retains flexibility to devise an appropriate program, in light of the available research," *Ridley II*, 680 F.3d at 275-79.

## 2. Reimbursement Litigation

E.R.'s parents did not pursue their IEP-related claims further, but they did ask Ridley to reimburse them for their private-school expenses between the administrative hearing

6

officer's decision in 2009 and the conclusion of the IEP appeal in this Court in 2012. *See Ridley IV*, 744 F.3d at 116-17. When Ridley declined, E.R.'s parents filed suit in the District Court under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j), seeking "to have the cost of [E.R.'s] placement paid through final resolution of the dispute over her educational placement," App. 23.

This time, the District Court ruled in the parents' favor. *See M.R. v. Ridley Sch. Dist. (Ridley III)*, No. 11-2235, 2012 WL 3279230, at *5-13 (E.D. Pa. Aug. 13, 2012). Although Ridley asserted a trio of defenses—claim preclusion, the parents' alleged failure to bring a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) in their first suit, and the IDEA's ninety-day statute of limitations—the District Court rejected each of them, concluding that Ridley's reimbursement obligations began once the hearing officer issued her decision in E.R.'s parents' favor and continued through the completion of the appeals process. *See id.*

On appeal, we affirmed the District Court's decision on the reimbursement issue in full. *See Ridley IV*, 744 F.3d at 120-28. Ridley then petitioned the Supreme Court for a writ of certiorari, which was denied on May 18, 2015. *See Ridley School District v. M.R.*, 135 S. Ct. 2309 (2015). Only after that denial did Ridley reimburse E.R.'s parents as the District Court had ordered in 2012.

### 3. Attorneys' Fees Motion

Having finally obtained the reimbursement they sought, E.R.'s parents filed a motion for an award of attorneys' fees under the IDEA's attorneys' fees provision,

7

20 U.S.C. § 1415(i)(3)(B)(i), but the District Court denied the motion, holding that reimbursement for the costs of E.R.'s temporary "stay put" placement was only "interim" relief and thus E.R.'s parents were not "prevailing parties," App. 10-11. This appeal followed.

## II.  Standard of Review[1]

Although ordinarily we review attorneys' fees rulings for abuse of discretion, our review is plenary where, as here, the district court based its denial on legal conclusions. *Raab v. City of Ocean City*, 833 F.3d 286, 292 (3d Cir. 2016).  That is, the District Court here did not deny fees on the ground that, even if E.R.'s parents were "prevailing part[ies]" under § 1415(i)(3)(B)(i), their success was *de minimis*; if it had, then our review would be for abuse of discretion. *See Farrar v. Hobby*, 506 U.S. 103, 114-16 (1992); *id.* at 119 (O'Connor, J., concurring).  Instead, the District Court determined, as a threshold matter, that E.R.'s parents were not "prevailing part[ies]," so the District Court lacked discretion to award any fees.  Its determination on the "prevailing party" issue is a legal conclusion over which our review is plenary. *See D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 495 (3d Cir. 2012).

## III.  Discussion

Applying this standard of review, we conclude, contrary to the District Court's decision, that E.R.'s parents in

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A).  We have jurisdiction pursuant to 28 U.S.C. § 1291.

fact are "prevailing part[ies]" under § 1415(i)(3)(B)(i) and thus are eligible for a fee award. To provide context for the reasons behind our conclusion, we first retrace the District Court's analysis.

The IDEA attorneys' fee provision, like various other statutory fee-shifting provisions, allows courts to award attorneys' fees to a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i).[2] Because statutory language is generally interpreted in the same way as its "functional equivalent" in a similar context in the United States Code, *Gomez-Perez v. Potter*, 553 U.S. 474, 481 (2008), we interpret this fee provision consistently with other federal statutes using the term "prevailing party," *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 n.4 (2001). Thus, to "prevail" under the IDEA, as under other statutes with "prevailing party" fee provisions, a party must obtain a "material alteration of the legal relationship of the parties" that is "judicially sanctioned." *Raab*, 833 F.3d at 292 (quoting *Buckhannon*, 532 U.S. at 604-05). Importantly, a party achieves a "material alteration" of the parties' legal relationship and "prevail[s]" for attorneys' fees purposes only if he obtains relief that is "in some way merit[s]-based." *Id.* at 293. Fee-shifting under a "prevailing party" statute is not appropriate, for example, when a plaintiff wins a preliminary injunction with respect to a particular request for relief but

---

[2] *See also, e.g.*, 42 U.S.C. § 1988(b) (certain civil rights statutes); 42 U.S.C. § 2000e-5(k) (Title VII of the Civil Rights Act of 1964); 42 U.S.C. § 3613(c)(2) (Fair Housing Act); 42 U.S.C. § 12205 (Americans with Disabilities Act); 52 U.S.C. § 10310(e) (Voting Rights Act of 1965).

then loses on the merits of that request for relief. *See Sole v. Wyner*, 551 U.S. 74, 86 (2007).

In the IDEA context, our opinions in *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003), and *J.O. ex rel. C.O. v. Orange Township Board of Education*, 287 F.3d 267 (3d Cir. 2002), have applied the requirement of merits-based relief to three forward-looking injunctive orders: an order requiring a child's temporary reinstatement to public school after the school district had requested home-schooling, *J.O.*, 287 F.3d at 269-70, a preliminary injunction to preserve supplemental services previously provided by a school district, *John T.*, 318 F.3d at 549-50, and a contempt order aimed at ensuring the school district's compliance with the preliminary injunction, *id.* at 551, 554. We held in *John T.* and *J.O.* that all three orders relating to temporary and preliminary relief were not merits-based and thus could not confer "prevailing party" status under § 1415(i)(3)(B)(i). *See John T.*, 318 F.3d at 558-60; *J.O.*, 287 F.3d at 273-74.[3]

---

[3] We acknowledge that our conclusion with respect to the preliminary orders in *J.O.* and *John T.* exists in tension with the fact that, when a preliminary injunction pertains to a child's education, the injunction awards schooling or supplemental services that cannot be nullified, even if an adjudicator ultimately holds that those educational services were not required under the IDEA. *See generally N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1112-13 (9th Cir. 2010) (implying, because the temporary denial of educational services can create irreparable harm, that even interim educational services can create lasting benefits); *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 122 (1st Cir.

In its diligent attempt to follow our opinions in *John T.* and *J.O.*, the District Court here wrote a thoughtful and thorough opinion, denying attorneys' fees because, in comparing the orders in *John T.* and *J.O.* to the reimbursement award here, the District Court reasoned that the reimbursement award was a form of temporary "stay put" relief and that, under *John T.* and *J.O.*, such "interim" relief could not confer "prevailing party" status. App. 10-11. Although we disagree with that analysis, we acknowledge the novelty of the fee motion before the District Court: *John T.* and *J.O.* addressed forward-looking and injunctive IDEA "stay put" relief, but we have never before addressed eligibility for fees in a case where a party received backward-looking and compensatory relief arising from the IDEA's "stay put" provision.

We hold today that such relief is merits-based and confers "prevailing party" status. In so doing, we draw support, first, from the IDEA's text; second, from our case law; and third, from the persuasive precedent in other Circuits.

---

2003) (same). Indeed, a claim for such preliminary and injunctive educational relief could be viewed as having its own merits, independent of a dispute over a child's IEP or educational placement. *See* 20 U.S.C. § 1415(j). But *J.O.* and *John T.* constrain us to consider preliminary injunctions in the education context no differently from those outside of the education context, and we therefore will ignore any distinctions between educational and non-educational preliminary injunctions in our discussion below.

## A. Statutory Text

### 1. "Prevailing Party"

We begin with the IDEA's text. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). Borrowing from the "prevailing party" fee provision applicable to suits brought under various federal civil rights statutes, 42 U.S.C. § 1988, the IDEA's attorneys' fees provision states that a district court, "in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i).[4] For that reason, we interpret the language of § 1988 and the IDEA attorneys' fees provision in "the same way," *In re Cmty. Bank*, 418 F.3d 277, 295-96 (3d Cir. 2005), and are bound by our cases addressing § 1988—two of which counsel in favor of holding that E.R.'s parents received merits-based relief that conferred "prevailing party" status. We discuss those two cases below.

First, in *Bagby v. Beal*, we held that, because the plaintiff was afforded a due process hearing, she was the "prevailing party" under § 1988 with respect to her 42 U.S.C.

---

[4] The text of the IDEA attorneys' fees provision itself, by tracking § 1988 nearly verbatim, makes clear that it is premised on § 1988. *See* 20 U.S.C. § 1415(i)(3)(B)(i); *cf.* 42 U.S.C. § 1988. The legislative history reinforces that conclusion, as a conference report on the IDEA's "prevailing party" fees provision expressly references *Marek v. Chesny*, 473 U.S. 1 (1985), a Supreme Court case interpreting § 1988. *See* H.R. Rep. No. 99-687, at 5 (1986) (Conf. Rep.); *see also Marek*, 473 U.S. at 7-18.

§ 1983 procedural due process claim, even if she did not ultimately prevail at the due process hearing. 606 F.2d 411, 414-15 (3d Cir. 1979). We reasoned that the hearing's outcome meant only that the plaintiff did not succeed on her underlying substantive due process claim, even though the fact of the hearing meant that she had prevailed on her procedural due process claim. *See id.*

So too here. Even though E.R.'s parents did not succeed with respect to their request for a permanent private school placement, *see Ridley II*, 680 F.3d at 273-79, they did prevail with respect to their procedural right to reimbursement under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j). *See Ridley IV*, 744 F.3d at 117-19. Indeed, § 1415 has the heading "procedural safeguards," and section headings are "tools available for the resolution of a doubt about the meaning of a statute." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)). *Bagby* thus counsels in favor of deeming E.R.'s parents' procedural success a victory "on the merits" that conferred "prevailing party" status. *Bagby*, 606 F.2d at 415.

Second, in *People Against Police Violence v. City of Pittsburgh*, we held that the plaintiffs were "prevailing parties" under § 1988 by virtue of an injunction that had permanently prevented the defending city from enforcing an unconstitutional ordinance; had granted the plaintiffs "what they sought on an enduring basis"; and had been a temporary or "preliminary" injunction only in the sense that it did not apply to the city's later-revised ordinance, which had remedied the preexisting constitutional defects. 520 F.3d 226, 228-30, 232-36 (3d Cir. 2008). Given that the district court's analysis of claims and defenses with respect to the

13

unconstitutional first ordinance was independent of its analysis with respect to the revised ordinance, we held that the injunction afforded the plaintiffs "lasting relief on the merits of their claims," *id.* at 229-30, 234, providing "an example of that rare situation where a merits-based determination is made at the injunction stage," *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc).

Here, likewise, the particular claims and defenses about E.R.'s educational placement, which the parties had litigated in the IEP action, were independent of the claims and defenses about Ridley's "stay put" obligations, which the parties litigated in the reimbursement action. *Compare Ridley IV*, 744 F.3d at 120-28, *with Ridley II*, 680 F.3d at 267-83. Because the presence of independent claims and defenses signals the presence of independent merits, *see People Against Police Violence*, 520 F.3d at 229-30, 234; *see also Sch. Dist. v. Lake Asbestos of Quebec, Ltd. (In re Sch. Asbestos Litig.)*, 842 F.2d 671, 678 (3d Cir. 1988), our reasoning in *People Against Police Violence*, like our decision in *Bagby*, favors the view that the reimbursement obtained here, arising from claims and defenses that were independent of those relating to E.R.'s IEP, conferred "prevailing party" status to E.R.'s parents.

Read together, *Bagby* and *People Against Police Violence* support an interpretation of "prevailing party" under 42 U.S.C. § 1988 that allows permanent procedural relief, when the plaintiff has obtained it through an independent merits determination, to confer "prevailing party" status. Today we import that analysis into the IDEA context, where, as we explain below, the IDEA's statutory context and "overall object" provide additional support for holding that

14

E.R.'s parents are prevailing parties. *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 375 (3d Cir. 2012) (quoting *Disabled in Action of Pa. v. SEPTA*, 539 F.3d 199, 210 (3d Cir. 2008)).

## 2.  Statutory Context

We read statutory provisions in context, *see King v. Burwell*, 135 S. Ct. 2480, 2489 (2015), and must consider any legislative findings that would "enable us to evaluate [Congress's] legislative judgment," *United States v. Lopez*, 514 U.S. 549, 562-63 (1995).  Here, Congress expressly found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity . . . for individuals with disabilities," 20 U.S.C. § 1400(c)(1), and thus the statute seeks to make "the education of children with disabilities . . . more effective," to "ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs," and to "ensure that the rights of children with disabilities and parents of such children are protected," *id.* § 1400(c)(5), (d)(1)(A), (d)(1)(B). Along these lines, the IDEA's legislative history reflects that Congress enacted the attorneys' fees provision specifically to ensure "that due process procedures, including the right to litigation if that [becomes] necessary, [are] available to all parents."  S. Rep. No. 99-112, at 2 (1985).

These child- and parent-friendly goals are not a reason for us to interpret "prevailing party" under the IDEA any differently than we would under other statutes, *Buckhannon*, 532 U.S. at 610; *John T.*, 318 F.3d at 558, but, in considering the statutory context, we must consider the practical consequences of withholding attorneys' fees in cases like this

15

one, *see Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016); *Long*, 671 F.3d at 375. After all, courts are "decidedly receptive" to remedies that are "necessary or at least helpful to the accomplishment of the statutory purpose." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 703 (1979).

We accordingly reject Ridley's contention that any and all relief relating to the IDEA's "stay put" provision simply cannot confer "prevailing party" status. Ridley's position, if made law, would render it impossible in many cases for parents, who ordinarily cannot afford private counsel, to enforce their "stay put" rights. *See generally Kay v. Ehrler*, 499 U.S. 432, 436 & n.8 (1991); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968). While we are confident the vast majority of school districts view their mission as collaborative, not adversarial, with parents in their joint endeavor to provide children with meaningful educational opportunities and appropriate support, we cannot ignore the reality of occasional lapses. Nor can we allow school districts that ignore their obligations under the IDEA's "stay put" provision to do so with impunity—a result that is the antithesis of the IDEA's goals. *See* 20 U.S.C. §§ 1400(d), 1415(f)-(j).

The IDEA's statutory scheme accords far better with an attorneys' fee regime that allows parents to take effective legal action if necessary to enforce their "stay put" rights. Granted, fees are not available when parents seek a forward-looking "stay put" injunction, *see John T.*, 318 F.3d at 558-60; *J.O.*, 287 F.3d at 273-74, but such injunctive relief is often litigated as part and parcel of the underlying proceedings about the child's IEP or educational placement, *see, e.g.*, *John T.*, 318 F.3d at 549-51, with a commensurate reduction in the time and burden of litigation. By contrast,

when a school district violates its "stay put" obligations and parents must take action—whether by motion or by separate complaint—to obtain retrospective compensatory relief, then, for all practical purposes, the resulting proceedings are separate from any IEP or educational placement proceedings.

Our customary interpretation of the term "prevailing party" and the statutory context of the fee provision at issue compel us to consider not only the course charted by our prior opinions, but also the real consequences of withholding attorneys' fees when parents obtain retrospective compensatory relief arising from the IDEA's "stay put" provision. In situations like these, we conclude that the parents are "prevailing part[ies]" eligible for an award of attorneys' fees under § 1415(i)(3)(B)(i).

## B. Third Circuit Cases

Our previous opinions in the IDEA context buttress our conclusion in this case. In *P.N. ex rel. M.W. v. Clementon Board of Education*, for instance, we held that an award reimbursing parents for the costs of supplemental services conferred "prevailing party" status under the IDEA. *See* 442 F.3d at 850-51, 856-57. Likewise, after affirming the parents' right to reimbursement for the costs of a child's "stay put" placement in *Drinker ex rel. Drinker v. Colonial School District*, we stated that the parents were "entitled to renew their motion for attorneys' fees" on remand, thereby confirming that the parents were prevailing parties. 78 F.3d 859, 863-68 (3d Cir. 1996). Even when discussing reimbursement related to a temporary "stay put" educational placement, thus, our prior opinions establish that retrospective and compensatory relief can ground a fee award.

17

Ridley, however, points to isolated phrases in *John T.* and *J.O.* and contends they oblige us to hold that relief arising from the IDEA's "stay put" provision can never confer "prevailing party" status. Not so. The school district ignores the procedural postures of those cases, which, as discussed above, involved forward-looking and temporary injunctive relief, not backward-looking and compensatory relief that requires an independent merits determination. *See John T.*, 318 F.3d at 549-51, 558-60 (preliminary injunction); *J.O.*, 287 F.3d at 269-70, 273-74 (order granting temporary reinstatement to public school).

To be sure, the contempt order in *John T.* awarded John T.'s parents $1100 as a rough estimate of the value of services that the school district, in violating the district court's preliminary injunction, had refused to provide for a particular month. *John T.*, 318 F.3d at 551. But that monetary award, in contrast to the compensatory relief equating to actual damages awarded here, took the form of a remedial civil sanction, existing not merely to remedy "losses sustained due to noncompliance" but also to "coerce compliance" with the district court's underlying injunction. *Id.* at 554 (emphasis omitted) (quoting *United States v. Pozsgai*, 999 F.2d 719, 735 (3d Cir. 1993)). For that reason, the contempt order awarded an amount approximating John T.'s parents' losses, but did not purport to reimburse their actual expenses. *See McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 240-41 (3d Cir. 2005); *John T.*, 318 F.3d at 554.

As we explained in *John T.*, the contempt order's close relationship with the underlying preliminary injunction alters the nature of the "prevailing party" analysis for such an order: a contempt order is considered "in . . . relation to the underlying relief that it enforces" and cannot confer

18

"prevailing party" status unless the underlying relief does. *John T.*, 318 F.3d at 559-60. Accordingly, when the underlying relief is forward-looking, injunctive, and temporary, the contempt order is too. *See id.* And the basic equivalence between a contempt order and the underlying relief it enforces extends not only to the "prevailing party" analysis, but also to whether the contempt order is appealable: because "a civil contempt proceeding is a continuation of the underlying civil action from which it arises," in most cases the contempt order is not immediately appealable when the underlying action is not yet appealable. 3A Charles Alan Wright et al., *Federal Practice and Procedure* §§ 703, 714 (4th ed. 2017); *see John T.*, 318 F.3d at 559; *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 636 (3d Cir. 1982). In *John T.*, thus, the contempt order equated to a rewriting of the underlying forward-looking and temporary injunction in stronger terms, and hence it did not confer "prevailing party" status. *See John T.*, 318 F.3d at 559-60.

What we have here is something wholly different. True, the reimbursement suit arose because of Ridley's refusal to obey its obligations under the IDEA's "stay put" provision, 20 U.S.C. § 1415(j), *see Ridley IV*, 744 F.3d at 119. But E.R.'s interim forward-looking right under § 1415(j) to stay in private school was not at issue, and, in contrast to a contempt order that we must consider in relation to an underlying preliminary injunction, *cf. John T.*, 318 F.3d at 559-60, or forward-looking and temporary injunctive relief, *cf. John T.*, 318 F.3d at 558-59; *J.O.*, 287 F.3d at 273-74, E.R.'s parents' reimbursement award equated to backward-looking compensatory relief intended "to redress the concrete loss that the plaintiff[s] . . . suffered by reason of the defendant's wrongful conduct," *State Farm Mut. Auto.*

19

*Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  The reimbursement award, in other words, had its own, independent merits and sought relief separate from any other relief that E.R.'s parents had sought from Ridley—characteristics that confer "prevailing party" status.

### C.  Other Circuits' Cases

The distinction we adopt today between forward-looking injunctive "stay put" relief and backward-looking compensatory "stay put" relief accords with the approaches taken by our Sister Circuits.  On the one hand, other Courts of Appeals addressing forward-looking injunctive orders have held that "stay put" injunctions and similar temporary orders relating to a child's educational placement cannot confer "prevailing party" status, as we did in *John T.* and *J.O.*[5]  On the other hand, Courts of Appeals addressing reimbursement awards in the broader context of the IDEA have held generally that retrospective and compensatory relief confers "prevailing party" status,[6] and

---

[5] *See Tina M. ex rel. S.M. v. St. Tammany Parish Sch. Bd.*, 816 F.3d 57, 58-62 (5th Cir. 2016); *Bd. of Educ. v. Nathan R. ex rel. Richard R.*, 199 F.3d 377, 382 (7th Cir. 2000); *Bd. of Educ. v. Steven L. ex rel. Andrew L.*, 89 F.3d 464, 466-67, 469 (7th Cir. 1996); *Christopher P. ex rel. Norma P. v. Marcus*, 915 F.2d 794, 797-98, 804-05 (2d Cir. 1990).

[6] *See T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 473, 479-80 (7th Cir. 2003); *G ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 301, 310 (4th Cir. 2003); *Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431, 1433, 1439-40 (10th Cir. 1997).

both appellate and district courts have ruled, specifically in the context of addressing backward-looking "stay put" relief (analogous to the reimbursement award here) or similar independent relief obtained under the IDEA, that such relief does confer "prevailing party" status, consistent with our conclusion today.[7]

\* \* \*

For the reasons discussed above, we hold that the IDEA's "stay put" provision, 20 U.S.C. § 1415(j), gives rise to two concomitant rights. First, the provision establishes a physical right for a child with a disability to "stay put" in her

---

[7] *See Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 15-16 (1st Cir. 2003); *A.D. ex rel. L.D. v. Dep't of Educ.*, No. 12-0307, 2014 WL 692910, at \*1, \*3 (D. Haw. Feb. 20, 2014); *Dep't of Educ. v. C.B. ex rel. Donna B.*, No. 11-0576, 2013 WL 704934, at \*2-3, \*6-7 (D. Haw. Feb. 26, 2013); *Student X. v. N.Y.C. Dep't of Educ.*, No. 07-2316, 2008 WL 4890440, at \*27 (E.D.N.Y. Oct. 30, 2008); *K.R. ex rel. M.R. v. Bd. of Educ.*, 66 F. Supp. 2d 444, 450-51 (E.D.N.Y. 1999). Citing to *Termine ex rel. Termine v. William S. Hart Union High School District*, Appellants point out that a Ninth Circuit panel held that a tuition reimbursement award "in a separate stay-put action" rendered the parents "prevailing parties." Appellants' Br. 21 (citing *Termine*, 288 F. App'x 360, 362 (9th Cir. 2008)). While we agree that the reasoning of the Ninth Circuit panel is persuasive, pursuant to Ninth Circuit Rule 36-3(a), we cannot ascribe precedential value to *Termine*, which is an unpublished and non-precedential opinion. *See* 9th Cir. R. 36-3.

21

"then-current educational placement," which is a temporary right to forward-looking injunctive relief that does not determine the merits of any claim. *See Drinker*, 78 F.3d at 864. Second, if a school district refuses to provide or pay for the child's "then-current educational placement," the "stay put" provision establishes the parents' right to monetary reimbursement or, alternatively, the child's right to compensatory education, both of which are rights to backward-looking compensatory relief and require an independent merits determination. *See Ridley IV*, 744 F.3d at 119; *see also Lester H. ex rel. Octavia P. v. Gilhool*, 916 F.2d 865, 872-73 (3d Cir. 1990).

If the school district violates either right, then the parents can bring administrative or judicial action to enforce the violated right, and the parents' eligibility for a fee award, if they are successful, depends on the underlying right enforced. Where the action enforces the child's physical right to "stay put" and the parents obtain temporary forward-looking injunctive relief, there is no determination "on the merits" and the parents are not eligible for a fee award. *See John T.*, 318 F.3d at 558-59. But where the action enforces the parents' right to reimbursement or the child's right to compensatory education and the parents obtain backward-looking compensatory relief, the action requires an independent merits determination and the parents are eligible for a fee award.[8]

---

[8] In the course of oral argument, the issue was raised as to whether the "prevailing party" analysis is materially different for actions commenced at the administrative level and seeking backward-looking compensatory relief under the IDEA's "stay put" provision. For the avoidance of doubt, and

22

E.R.'s parents' reimbursement litigation falls into the latter category: When Ridley refused to pay for E.R.'s "stay put" placement, E.R.'s parents sued for backward-looking compensatory relief, and, when they won the relief they sought, they obtained a merits-based victory. *See Ridley IV*, 744 F.3d at 117-28. E.R.'s parents are therefore "prevailing part[ies]" under the IDEA and are eligible for an award of attorneys' fees, 20 U.S.C. § 1415(i)(3)(B)(i), to be set by the District Court.[9]

given that there is no exhaustion requirement for actions seeking relief under the IDEA's "stay put" provision, *see Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002), we hold that parents who obtain backward-looking compensatory relief are prevailing parties under the IDEA, whether they first pursue such relief in an administrative agency or in a court.

[9] In their application for attorneys' fees and costs in the District Court, counsel for E.R.'s parents made a lengthy submission, including multiple declarations concerning the hours expended and the prevailing rates for attorneys of comparable experience. While we leave it to the District Court on remand to consider the amount of E.R.'s parents' fee award in the first instance, we note that the litigation here was conducted by highly qualified and experienced counsel and was itself extensive and protracted, with proceedings spanning from March 2011 to April 2016 and encompassing pleadings, motions, and briefing in the District Court; full briefing and argument in the Court of Appeals; and opposition to a petition for certiorari in the Supreme Court.

23

**IV. Conclusion**

For the foregoing reasons, we will reverse and remand for proceedings consistent with this opinion.