NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1972
_____

EDSON R. ARNEAULT;
GREGORY J. RUBINO;
PASSPORT REALTY, LLC,

Appellants

v.

KEVIN F. O'TOOLE; R. DOUGLAS SHERMAN; E. BARRY CREANY;
PHILIP J. RENDIN; THOMAS J. BRLETIC; GARY TALLENT; DAVID SMITH;
GREGORY C. FAJT; RAYMOND S. ANGELI; JEFFREY W. COY;
JAMES B. GINTY; KENNETH T. MCCABE; GARY A. SOJKA;
KENNETH T. TRUJILLO; SANFORD RIVERS; ROBERT GRIFFIN;
DAVID HUGHES; JAMES V. STANTON; JOHN BITTNER; NARICISO A.
RODRIGUEZ-CAYRO; VINCENT AZZARELLO; MTR GAMING GROUP, INC.;
PRESQUE ISLE DOWNS , INC.; LEONARD G. AMBROSE, III;
NICHOLAS C. SCOTT; SCOTTS BAYFRONT DEVELOPMENT

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1-11-cv-00095)
District Judge: Honorable Sean J. McLaughlin
_____

Argued January 8, 2013

Before:  SCIRICA, AMBRO, and FUENTES, Circuit Judges

(Opinion Filed: February 7, 2013)

Joseph M. Kanfer, Esquire
John F. Mizner, Esquire  (Argued)
Mizner Law Firm
201 German Street
Erie, PA   16507

       Counsel for Appellants

Lee A. Rosengard, Esquire  (Argued)
David E. Somers, Esquire
Andrew K. Stutzman, Esquire
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
2005 Market Street
Philadelphia, PA   19103

John A. Goodman, Esquire  (Argued)
Gregory A. Miller, Esquire
Mariah L. Passarelli, Esquire
Buchanan Ingersoll & Rooney
301 Grant Street
One Oxford Centre, 20th Floor
Pittsburgh, PA   15219

Krista K. Beatty, Esquire
Henry F. Siedzikowski, Esquire  (Argued)
Frederick P. Santarelli, Esquire
Elliott Greenleaf & Siedlkowski
925 Harvest Drive, Suite 300
Union Meeting Corporate Center V
Blue Bell, PA   19422

John M. Donnelly, Esquire
Levine, Staller, Sklar, Chan, Brodsky & Donnelly
3030 Atlantic Avenue
Atlantic City, NJ   08401

Harry P. Litman, Esquire
Litman Law Firm
One Oxford Centre, 34th Floor
Pittsburgh, PA   15219

Tina O. Miller, Esquire
Farrell & Reisinger
200 Koppers Building
436 Seventh Avenue
Pittsburgh, PA   15219

Jeanette H. Ho, Esquire
Robert R. Leight, Esquire
William A. Pietragallo, II, Esquire
Peter S. Wolf, Esquire  (Argued)
Pietragallo, Gordon, Alfano, Bosick & Raspanti
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA   15219

Ronald A. DiNicola, Esquire (Argued)
1001 State Street, Suite 1400
Erie, PA   16501

      Counsel for Appellees

_____

OPINION

_____

AMBRO, Circuit Judge

Appellants Edson Arneault, Gregory Rubino, and Passport Realty brought this lawsuit alleging wrongdoing by a variety of government officials and third parties during the creation and licensing of Presque Isle Downs, a casino in Erie, Pennsylvania.  The District Court dismissed all of Appellants' federal claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and declined to exercise jurisdiction over their state-law claims.  They challenge the dismissal of three counts and the Court's determination that further amendment of their complaint would be futile.

**I.**

3

Because we write only for the parties, and in the shadow of Judge McLaughlin's thorough opinion, we recite only those facts necessary to our decision. Arneault is a gaming executive and the former President and CEO of MTR Gaming Inc. ("MTR"). Rubino is a real estate agent and developer, and the owner of several businesses including Passport Realty.

## A. Facts Relating to Rubino's Claim

When MTR applied to the Pennsylvania Gaming Control Board ("PGCB") for a gaming license, the PGCB required Rubino and his affiliated companies to apply for gaming licenses because of a 2001 Consulting Agreement between Rubino and MTR that gave Rubino an interest in MTR's profits. After contesting the licensing requirement, Rubino eventually submitted the applications. Faced with a possible delay of MTR's gaming license because of Rubino's applications, MTR and Rubino agreed to a buyout of the latter's interests under the Consulting Agreement, and Rubino's applications were withdrawn.

After the buyout, the PGCB added a statement of condition—known as SOC 58— to MTR's gaming license that prohibited MTR and its subsidiaries from engaging in business with Rubino or his affiliates. Several attempts to have SOC 58 removed from MTR's license ended in 2009 when the PGCB Commissioners voted to hold Rubino's request to lift SOC 58 in abeyance until Rubino applied for a gaming license.

## B. Facts Relating to Arneault's Claims

While Arneault was CEO of MTR, he directed MTR's counsel to lodge several complaints concerning the PGCB's investigatory arm, the Bureau of Investigation and

4

Enforcement ("BIE"). When Arneaul later submitted a renewal application for his personal license, the BIE prepared a May 2008 Report of Investigation recommending his license renewal be denied ("Report of Investigation"). Based in part on that Report, the Office of Enforcement Counsel issued a Notice of Recommendation in January of 2010 also recommending that the PGCB deny Arneault's application ("Denial Recommendation"). At a hearing, Arenault presented evidence in support of his application, and his license was ultimately renewed. Both documents, however, were made public prior to the hearing, allegedly harming Arneault's reputation in the gaming industry.

## II.

We exercise plenary review over a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6).[1] *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010). Although we accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009), "we are not compelled to accept unsupported conclusions or unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks omitted). In order to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

5

Appellants appeal portions of the District Court's rulings that the actions against them were retaliatory and that, in Arneault's case, he was denied procedural due process. Appellants also argue the Court erred when it dismissed their complaint with prejudice.

### A.     Arneault's Retaliation Claim

"In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action . . . , and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas, A.W.T., Inc. v. Independence Twp.*, 436 F.3d 285, 296 (3d Cir. 2006). Arneault asserts that he engaged in four instances of protected conduct: (1-2) in November of 2006 and May of 2007, he directed MTR's counsel to object to two burdensome investigatory requests made on MTR by BIE agents; (3) in May of 2007 he directed MTR's counsel to complain about an interview between BIE agents and a third-party vendor where BIE agents alleged that Arneault engaged in election law violations and the agents solicited the vendor to provide false testimony about Arneault; and (4) in January of 2008, he sought to have SOC 58 removed from MTR's license. He alleges five adverse actions by state actors in escalating retaliation for his conduct: (a) the burdensome 2007 document request; (b) the defamatory statements at the May 2007 interview; (c) the recommendation in the Report of Investigation; (d) the Denial Recommendation; and (e) an attempt by the PGCB to impose conditions on his renewed license.

Although we are not persuaded by the District Court's reasoning that three of Arneault's alleged exercises of constitutionally protected activities—(1), (2), and (4)

above—should be excluded from his claim because they are attributable to MTR as a corporation and not Arneault individually,[2] we agree with the Court's conclusion that Arneault has not pled the causational element of a retaliation claim. A causal connection can be shown by "either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Alternately, the trier of fact can infer causation based on evidence gleaned from the record as a whole. *Id.* Five retaliatory actions, undertaken by several different defendants over the course of four years allegedly in response to complaints against several different defendants, are not sufficient in this case to satisfy these tests.

## B. Arneault's Procedural Due Process Claim

To state a claim for a procedural due process violation, a plaintiff must allege that (1) he was deprived of a liberty interest encompassed within the Fourteenth Amendment and (2) the procedures used did not provide due process of law. *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Arneault asserts that his right to procedural

---

[2] The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., amend. I. It is related to the protection afforded to speech, and "is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). "[T]he right to petition extends to all departments of the Government," including "administrative agencies," *California Motor Trans. Co., v. Trucking Unlimited*, 404 U.S. 508, 510 (1972), and encompasses formal and informal complaints, *McDonald*, 472 U.S. at 484, about matters of public and private concern. *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 379–80 (1991). MTR's complaints qualify as an exercise of that right. *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137 (1961). Appellees do not cite, nor can we find, case law supporting the distinction drawn by the District Court between retaliation against an individual for exercising his rights under the First Amendment or directing the company of which he is a fiduciary to do so.

due process was violated when the Report of Investigation and Denial Recommendation were published without first affording him a hearing.

Loss of reputation is a liberty interest when accompanied by deprivation of some additional right or interest; this is known as the "stigma-plus test." *Id.* at 236. Although the District Court assumed for the sake of argument that this prong was met, Arneault has not alleged that publication of the reports cost him an additional right or interest. He did not lose his gaming license, nor does he allege that he lost any particular job or job prospect. Instead, he alleges that he lost possible career prospects and that his legal status changed because he was required to disclose the denial recommendation on future gaming license applications. These are part of the stigma alleged and not an additional lost interest or right. Even if Arneault could make out a liberty interest deprivation, he was able to present his suitability for a gaming license at a hearing, and his license was ultimately reviewed. Under the balancing inquiry of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), this was sufficient process.

### C. Rubino's Retaliation Claim

Rubino contends that the PGCB Commissioners held his petition for relief from SOC 58 in abeyance as retaliation for the exercise of his First Amendment rights. The District Court concluded that the Commissioners were entitled to absolute, quasi-judicial immunity under our recent holding in *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89 (3d Cir. 2011). Quasi-judicial immunity "attaches to public officials whose roles are functionally comparable to that of a judge." *Id.* at 95 (internal quotation marks omitted); *Butz v. Economou*, 438 U.S. 478, 513 (1978). In *Keystone*, we held that the

PGCB Commissioners enjoyed immunity from suit concerning the grant or denial of licenses. Although the procedures used with regard to Rubino's challenge to SOC 58 are different from those at issue in *Keystone*, we do not think that the Commissioners here acted outside of the functional capacity we determined was entitled to quasi-judicial immunity in that decision.

### D. Leave to Amend

Finally, Appellants argue that they should have been given leave to amend their complaint when the District Court dismissed their claims. Our standard of review is abuse of discretion. *United States v. United Health Grp.*, 659 F.3d 295, 302 (3d Cir. 2011). Generally, a plaintiff should be allowed to amend a complaint unless doing so would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Appellants do not explain how amendment would correct any of the deficiencies found by the Court. Based on the 147-page amended complaint and a thorough briefing on the motions to dismiss, the District Court determined that amendment would be futile. We do not think this was an abuse of discretion.

\* \* \* \* \*

Though we suspect a back story for what occurred in the licensing process, nothing in the record before us gives reason to overturn Judge McLaughlin's ultimate judgment.

9