**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4375
_____

EDSON R. ARNEAULT; GREGORY J. RUBINO; PASSPORT REALTY LLC

v.

KEVIN F. O'TOOLE; R. DOUGLAS SHERMAN; E. BARRY CREANY; PHILIP J.
RENDIN; THOMAS J. BRLETIC; GARY TALLENT; DAVID SMITH; GREGORY C.
FAJT; RAYMOND S. ANGELI; JEFFREY W. COY; JAMES B. GINTY; KENNETH
T. MCCABE; GARY A. SOJKA; KENNETH T. TRUJILLO; SANFORD RIVERS;
ROBERT GRIFFIN; DAVID HUGHES; JAMES V. STANTON; JOHN BITTNER;
NARCISO A. RODRIGUEZ-CAYRO; VINCENT AZZARELLO; MTR GAMING
GROUP INC; PRESQUE ISLE DOWNS; LEONARD G. AMBROSE, III; NICHOLAS
C. SCOTT; SCOTTS BAYFRONT DEVELOPMENT INC.

Edson R. Arneault and Gregory J. Rubino,
                                                                Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Civil No. 1-11-cv-00095)
Magistrate Judge:  Honorable Susan P. Baxter

Submitted:  October 12, 2017

Before:  CHAGARES, JORDAN, and FUENTES, <u>Circuit Judges</u>.

(Opinion Filed: December 4, 2017)

———————

OPINION*
———————

CHAGARES, <u>Circuit Judge</u>.

This appeal, set against a backdrop of the litigants' personal and professional rancor, pertains to two awards of attorneys' fees and costs to the appellees. Plaintiffs Edson R. Arneault and Gregory J. Rubino brought several claims against defendants Leonard G. Ambrose, Nicholas C. Scott, and Scott's Bayfront Development, Inc. (collectively, "the defendants"), and others. The District Court dismissed all of the claims, and the defendants were awarded fees and costs in an unspecified amount. The parties disputed the correct amount of fees and costs, and they were consequently ordered to participate in a settlement conference. At the conference, the presiding Magistrate Judge found that Arneault and Rubino participated in bad faith; therefore, the defendants were awarded fees and costs for both the underlying litigation and for that conference. Arneault and Rubino now appeal these awards. For the reasons that follow, we will affirm.

I.

As this Opinion is non-precedential and we write mainly for the parties, our factual recitation is abbreviated. In 2001, Arneault and Rubino entered into an agreement regarding the development of Presque Isle Downs ("Presque Isle"), a racetrack and

———————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

casino in Erie, Pennsylvania. Arneault was Chief Executive Officer of MTR Gaming Group Inc. ("MTR") — the firm that operated Presque Isle — and Rubino operated Tecnica Development Corp. ("Tecnica"), a real estate development firm. In return for Tecnica's services, MTR contracted, inter alia, to remit 3% of Presque Isle's earnings to Tecnica for a twenty-year term.

In the underlying civil action, Arneault and Rubino alleged that the Pennsylvania Gaming Control Board ("PGCB") intentionally defeated the purpose of their arrangement by imposing unusual licensing requirements and ultimately prohibiting MTR from conducting business with Tecnica or Rubino. Rubino and Tecnica's successor-in-interest petitioned the PGCB for relief from that prohibition in February 2008. The PGCB decided to hold its decision on that relief in abeyance pending Rubino's submission of a new license application, and they required MTR to sponsor the application. The plaintiffs argue that this sponsorship requirement "intentionally placed Rubino in an impossible situation" because "the PGCB Commissioners knew that great animosity existed between Rubino and the management of MTR at that time such that MTR would never sponsor such an application." Pl. Br. 7.[1] Ultimately, Rubino's license was renewed; however, he contends that he suffered business, reputational, and financial harm in the process. Pl. Br. 6.

While Rubino grappled with the PGCB, Arneault was engaged in another disagreement with that entity. In April 2008, he applied "to renew his license as an

---

[1] References herein to appellants' brief on appeal are cited to "Pl. Br."

officer, director and principal shareholder of MTR" in accordance with the Pennsylvania Race Horse Development and Gaming Act. Arneault retired from MTR several months later. Pl. Br. 8. He argues that, despite his retirement, the PGCB "continued to require him to renew his license in order for MTR's own license renewal to proceed." Pl. Br. 8. Thereafter, the PGCB conducted an investigation into his renewal application and issued a report that recommended its denial. Pl. Br. 8. The report specified that Arneault provided "false and misleading statements to the PGCB." Pl. Br. 8–9.

According to Arneault and Rubino, the plot thickened in summer 2006 when Ambrose — a criminal defense attorney — "met with PGCB agents . . . and falsely accused Rubino of being a member of the Mafia." Pl. Br. 9. In short, the substance of their allegations is that Ambrose misrepresented lawful business activity to the PGCB in order "to fulfill an earlier threat to 'get' Rubino." Pl. Br. 9.

In 2007, Ambrose began representing Scott's Bayfront Development, Inc. ("Scott's Bayfront")[2] in a civil action against the Erie County Convention Center Authority ("ECCCA"). Ambrose argued in that case that Rubino and others "improperly influenced ECCCA board members to terminate the relationship between the ECCCA and Scott's Bayfront so a proposal offered by Rubino could be accepted." Pl. Br. 10.

Following additional hearings with the PGCB, Arneault and Rubino filed the instant action in the United States District Court for the Western District of Pennsylvania, bringing federal and state claims against several private and government defendants.

_____

[2] Appellee Nicholas C. Scott is the principal of Scott's Bayfront.

4

Relevant to this appeal are Counts X and XI, which rely upon a theory of liability under 42 U.S.C. § 1983. Count X alleged a conspiracy to violate First Amendment, Due Process, and Equal Protection rights, based on a theory that Ambrose "was an agent of [] Nicholas C. Scott and Scott's Bayfront Development, Inc. [(collectively, "the Scott Defendants")] . . . and was acting within the scope of authority [they] provided" when he "conspired with the Government Defendants to deny Mr. Arneault and Mr. Rubino protections guaranteed under the . . . United States Constitution." App. Vol. III 141.[3] Count XI, which alleged liability for defamation, contended that "Ambrose, for his own purposes and as an agent of Defendants Scott and Scott's Bayfront, made arrangements for the delivery of [] illegally-obtained Tecnica and Rubino proprietary and confidential information to Government Defendants." App. Vol. III 145.

The defendants moved to dismiss the complaint and the District Court granted the motion. Arneault v. O'Toole, 864 F. Supp. 2d 361, 410 (W.D. Pa. 2012). Thereafter, Arneault and Rubino appealed, and this Court affirmed the District Court's dismissal. Arneault v. O'Toole, 513 F. App'x 195 (3d Cir. 2013).

The defendants then moved for attorneys' fees and costs. A Special Master was appointed to recommend findings on that motion. In his report, the Special Master recommended that the defendants were entitled to fees and costs in an amount to be determined at a later proceeding. Magistrate Judge Susan Baxter, to whom the case had been transferred by consent of the parties, accepted the report and recommendation with

---

[3] References herein to the appellants' Appendix are cited as "App. Vol. [#]."

modification.  She then ordered the parties to participate in a settlement conference before Magistrate Judge Robert Mitchell.  Magistrate Judge Mitchell "found that [Arneault and Rubino] stymied any legitimate settlement discussions and participated . . . in bad faith," concluding that fees and costs for this bad faith participation were warranted.  App. Vol. III 306.  On that ground, Magistrate Judge Mitchell awarded Ambrose $3,946.66 and the Scott Defendants $2,753.37.  App. Vol. III 311.  The initial attorneys' fees petitions then returned to the Special Master, who recommended a specific award of fees and costs.  Magistrate Judge Baxter adopted the recommendation with modification, awarding Ambrose $79,761.72 and the Scott Defendants $47,179.48.  App. Vol. I 104.  Following these awards of attorneys' fees and costs, Arneault and Rubino timely filed this appeal.

## II.

The District Court had jurisdiction over the relevant claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.  We review the District Court's award of attorneys' fees and its imposition of sanctions for abuse of discretion.  Raab v. City of Ocean City, 833 F.3d 286, 292 (3d Cir. 2016); Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 237 (3d Cir. 2007).

## III.

## A.

We first consider whether the award of attorneys' fees for the main litigation — distinct from the sanctioned conduct regarding the settlement conference — constituted

6

an abuse of discretion.[4] District courts are entitled to award reasonable attorneys' fees to prevailing defendants in § 1983 matters "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Fox v. Vice, 563 U.S. 826, 833 (2011) (quotation omitted); 42 U.S.C. § 1988(b). We rely on several factors to determine whether a § 1983 claim is frivolous, including whether the plaintiff established a prima facie case, the defendant offered to settle, the trial court dismissed the case prior to trial, and the issue is one of first impression. See Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 158 (3d Cir. 2001). As we noted in Barnes, these factors "are merely guidelines, not strict rules" and courts should make frivolousness determinations on a case-by-case basis. Id.

The core of Arneault and Rubino's position is threefold: (1) that their claims were not frivolous; (2) that the District Court applied improper legal standards; and (3) that the award of fees and costs was based in part on the mistaken finding that the plaintiffs had not alleged a real threat of injury. We address these arguments in turn.

First, we conclude that the District Court's finding on frivolousness is consistent with the sound exercise of discretion. Arneault and Rubino argue that they "alleged substantial factual support for recognized legal theories," Pl. Br. 27, and it is clear that their amended complaint contained a significant number of factual allegations. Nevertheless, the presence of many factual allegations does not alone prohibit a finding of frivolousness. The relevant inquiry is how the alleged facts contribute to the legal

---

[4] Arneault and Rubino do not appeal the imposition of non-attorneys' fees costs for the main litigation.

7

theories underpinning the plaintiffs' claims. The Special Master's report, which the District Court ultimately adopted, carefully considered the <u>Barnes</u> factors and the plaintiffs' factual allegations. App. Vol. I 14–23. The report noted, <u>inter</u> <u>alia</u>, that there was no offer to settle, that the lawsuit was dismissed before trial, that the matter did not present issues of first impression, and that the plaintiffs failed to present a prima facie case. The record contains no reason for us to upset these findings in accordance with the District Court's discretion recognized in <u>Barnes</u>.

Second, we conclude that the District Court did not commit reversible error in applying the relevant legal standards. Arneault and Rubino argue that the District Court improperly applied the standard for awarding fees applicable to prevailing plaintiffs rather than defendants. We disagree. The Special Master's report correctly notes the applicable standard for prevailing defendants and — as is required under that standard — considered whether Arneault and Rubino's claims were frivolous, unreasonable, or groundless.

We note, however, that the Special Master's report also includes the following quote from a case that applied the standard for prevailing plaintiffs:

> When a statute provides that a court "may" award counsel fees, an exercise of judicial discretion is triggered. Judges are not permitted to act arbitrarily. It seems likely, therefore, that when an award is authorized, it will not be withheld unless there is some valid reason for denial.

App. Vol. I 11 (quoting <u>Ellison v. Shenango Inc. Pension Bd.</u>, 956 F.2d 1268, 1279 (3d Cir. 1992)). The inclusion of the last sentence, which references the standard for plaintiffs, may have been improvident; however, it did not infect the entire report or

8

otherwise necessitate reversal. The quote is juxtaposed with a paragraph that clearly establishes the discretionary standard for prevailing defendants. Furthermore, the report later explains the distinction between the standards and applies the correct one. As a result, the quoted material does not have the significance that Arneault and Rubino ascribe to it.

Third, we are unconvinced that the District Court erred in finding that Arneault and Rubino failed to allege a real threat of injury. Arneault and Rubino cite the Special Master's report in support of this argument, but the passage cited pertains to other defendants in the underlying action, not those relevant to this appeal. Pl. Br. 36. When actually referring to Ambrose and the Scott Defendants, the report does reveal some ambiguity on this factor. The Special Master describes the parties' arguments and suggests that "[i]t <u>may be appropriate</u> for Plaintiffs to verify . . . assertions about the threat of harm and for Defendant Ambrose to have an opportunity to react to the veracity of such assertions before these matters are factored into a possible determination that fees and costs should be reimbursed." App. Vol. I 22–23 (emphasis added). Nevertheless, relying on other factors, the report still recommended the award of fees and costs and the District Court adopted the recommendation. Because, as noted above, the <u>Barnes</u> factors "are merely guidelines," it is not erroneous to rely on other factors without exhaustive analysis of this one.

9

Having carefully considered all of the parties' arguments,[5] we find no abuse of discretion with respect to the award of attorneys' fees for the main litigation.

B.

The remaining issue in this appeal is whether the District Court erred in sanctioning Arneault and Rubino for their bad faith participation in the settlement conference. We conclude that there are no grounds for reversal.

Pursuant to Fed. R. Civ. P. 16(f)(1)(B), district courts "may issue any just orders . . . if a party or its attorney . . . is substantially unprepared to participate—or does not participate in good faith—in [a pretrial] conference." Moreover, courts have "inherent authority to impose sanctions upon those who would abuse the judicial process." Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 (3d Cir. 1994) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43–44 (1991)).

Magistrate Judge Mitchell's conclusion that Arneault and Rubino acted in bad faith was based on a factual finding that they attended the conference but refused to participate in negotiations, having failed to communicate adequately and timely that their position was fixed prior to the conference. Supp. App. 47–48. It would thus seem that the surprise to the Court and to the opposing parties was the issue — in other words, the conduct was sanctionable because, at significant expense to the judiciary and to opposing counsel, a conference was held for no reason. On appeal, Arneault and Rubino argue that they did in fact communicate their fixed position — that they would not negotiate with

_____

[5] We conclude that the remainder of the plaintiffs' arguments are plainly without merit.

10

certain defendants — in a timely manner; however, their citation to the record does not support this proposition. Arneault and Rubino also argue that they would have negotiated with Ambrose and the Scott Defendants; however, Magistrate Judge Mitchell noted that this argument contradicts their in-chambers statements and that the plaintiffs never asked him to resume the settlement discussion with those defendants. In short, the record offers support for Judge Mitchell's findings and contains nothing that compels us to find error. Therefore, we will affirm the imposition of sanctions.

IV.

For the reasons stated above, we will affirm the awards of attorneys' fees and costs.