NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3021, 16-3022, 16-3034, 16-3035, 17-1037, 17-1038, 17-1284, & 17-1285
_____

THE SCHOOL DISTRICT OF PHILADELPHIA
Appellant in Nos. 16-3021, 16-3022, 17-1037,
17-1038, 17-1284, & 17-1285

v.

ROBERT KIRSCH, AND KAREN MISHER, PARENTS OF A.K. and N.K., MINORS
Appellants in Nos. 16-3034 & 16-3035
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. Nos. 2-14-cv-04910, 2-14-cv-04911)
District Judge: Honorable Thomas N. O'Neill, Jr.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 27, 2017
_____

Before: GREENAWAY, JR., COWEN, *Circuit Judges*, and PADOVA, *District Judge**

(Opinion Filed: February 5, 2018)

_____

OPINION[**]
_____

_____

[*] The Honorable John R. Padova, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PADOVA, *Senior District Judge*.

The School District of Philadelphia ("School District") appeals from three District Court Orders awarding tuition reimbursement for basic education and transportation for students A.K. and N.K. based on the School District's failure to provide A.K. and N.K. with a free and appropriate public education ("FAPE") from September through December 2013. Robert Kirsch and Karen Misher ("Parents") cross-appeal from two of those Orders to the extent that they deny certain of Parents' requests for reimbursement and grant summary judgment in favor of the School District with respect to A.K.'s and N.K.'s discrimination claims.[1] The School District also appeals the District Court's order awarding attorneys' fees and costs under the Individual with Disabilities Education Act's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B)(i)(1). The cases have been consolidated on appeal. For the reasons that follow, we will affirm in part and vacate in part.[2]

## I. BACKGROUND

### A. The 2013 IEP Process

A.K. and N.K. are twins who have been diagnosed with Autism Spectrum Disorder and are eligible for special education services pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"). In February 2013, Parents contacted

---

[1] The Council of Parent Attorneys and Advocates joined the appeal of two of the orders awarding tuition reimbursement as amicus counsel on behalf of Parents.

[2] The District Court had subject matter jurisdiction over the merits of this case under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1415(i)(2)(A), 1415(i)(3)(B)(i)(I); 28 U.S.C. § 1331; and 28 U.S.C. § 1343. *See also* 22 Pa. Code § 14.162(o). We have appellate jurisdiction under 28 U.S.C. § 1291.

the School District regarding kindergarten placements for the twins for the 2013-14 school year. In April 2013, Parents enrolled the twins in the School District and filled out the necessary paperwork so that the School District could evaluate the twins. On June 20, 2013, the School District held a meeting with Parents to review draft Individualized Education Programs ("IEPs") that the School District had prepared for A.K. and N.K. for the 2013-14 school year. The IEP team did not complete their review of the proposed IEP for N.K. during the meeting and never started reviewing the proposed IEP for A.K. The School District did not issue a Notice of Recommended Educational Placement ("NOREP") for either child at that time.

At the end of the June 20, 2013 meeting, the parties discussed meeting again the next day, but did not. The School District's Special Education Liaison ("SEL") told Parents that they did not need to rush to complete the twins' IEPs because they could exchange IEP revisions by email over the summer. However, no one informed Parents that the School District does not hold IEP meetings over the summer. On July 23, 2013, Parents emailed the SEL to ask about the process for completing the twins' IEPs, but received no response. Parents emailed the SEL again on August 5, 2013, and also emailed the School District's Early Intervention Services ("EI") coordinator regarding the twins' incomplete IEPs. The SEL replied that she no longer held that position, but had notified other School District employees that the twins' IEPs were incomplete. The EI coordinator responded that she would contact the School District's Special Education Director. On August 20, 2013, Parents hand-delivered a letter to the School District, stating that they would enroll the twins in private school in ten days to assure that the twins had appropriate placements

3

by the beginning of the school year and that they would seek tuition reimbursement from the School District. Parents also noted in their letter that they were willing to continue with the IEP process.

## B.     The Public School Placement

In the meantime, in July 2013, the School District's Special Education Director had identified an autistic support ("AS") classroom with space available close to the twins' home school, but had not informed Parents. After she received Parents' August 20, 2013 letter, the Special Education Director notified the school team at the identified school that they would need to be ready to deliver a program for the twins as soon as the school reopened for the 2013-14 school year. The teacher assigned to the AS classroom subsequently called Parents to set up a kindergarten interview. Parents attended the interview on September 11, 2013, at which time the AS teacher had not yet received the twins' files or read their last EI IEPs. Before the meeting ended, the AS teacher and the School District's new SEL gave Parents NOREPs for the twins as well as copies of the draft IEPs that the School District had prepared for the twins in June 2013. On September 15, 2013, Parents returned the signed NOREPs to the School District, disapproving the School District's educational placements for the twins and enclosing a letter describing their concerns regarding the School District's proposed IEPs.

## C.     The Private School Placement

During the spring and summer of 2013, while they were trying to work with the School District to obtain IEPs and appropriate placements for the twins, Parents were also working to create a private school, A Step Up Academy ("ASUA"), which the twins could

4

possibly attend. ASUA, a nonprofit founded by Misher, was licensed by the Pennsylvania Department of Education in August 2013. On September 5, 2013, Parents entered into an irrevocable tuition contract with ASUA for A.K.'s and N.K.'s enrollment in the school for the 2013-14 school year. ASUA charged Parents the following for each of the twins: basic annual tuition of $35,000.00 for the 2013-14 school year; $11,000.00 for an instructional assistant; $9,000.00 for individual speech therapy; $1,800.00 for individual occupational therapy; and $7,250.00 for a six-week Extended School Year ("ESY") program. The twins' basic tuition included ABA-based behavior support, academic instruction, one individual and three group speech/language therapy sessions per week, and one individual and three group occupational therapy sessions per week.

### D. The Final IEPs

Parents continued to work with the School District to develop IEPs for the twins after the 2013-14 school year began. On October 9 and 22, 2013, the School District held IEP meetings with Parents to review updated draft IEPs for A.K. and N.K. Both the October 9, 2013 IEP for A.K and the October 9, 2013 IEP for N.K. included a one-on-one ("1:1") aide for the entire school day, 600 minutes of pull-out speech/language therapy services for the school year, and ESY services for eight weeks for the summer of 2014. In December 2013, the School District provided Parents with final IEPs for A.K. and N.K., which were largely the same as the October 9, 2013 IEPs. Parents rejected the proposed IEPs.

## II.    PROCEDURAL HISTORY

In early October 2013, Parents filed special education due process complaints against the School District, requesting basic tuition reimbursement for the twins' first year at ASUA, as well as payment or reimbursement for other services not included in the twins' basic tuition at ASUA.  The Complaint triggered a due process hearing, which took place over eleven sessions from January 2014 through April 2014.  On July 2 and 3, 2014, the Hearing Officer issued her Decisions regarding A.K. and N.K.  She found in favor of Parents on some claims and in favor of the School District on others.  She concluded that the School District failed to offer A.K. and N.K. appropriate IEPs and NOREPs prior to the beginning of the 2013-14 school year and that ASUA was an appropriate placement for both twins.  She awarded Parents basic tuition reimbursement and transportation costs for the start of the 2013-14 school year through December 2013, when the School District offered Parents appropriate IEPs for the twins.  The Hearing Officer denied Parents' request for reimbursement for additional services such as a 1:1 aide, and speech/language and occupational therapy.

The School District appealed the Hearing Officer's Decisions to the Pennsylvania Commonwealth Court.  On August 22, 2014, Parents removed to the United States District Court for the Eastern District of Pennsylvania and asserted counterclaims against the School District for discrimination; for reimbursement of the twins' tuition, transportation, and other costs for the 2014-15 school year at ASUA; and for reasonable attorneys' fees and costs.  In a very thorough and well-reasoned memorandum opinion issued on November 30, 2015, the District Court upheld the Hearing Officer's Decisions to award

6

tuition reimbursement to A.K. and N.K. for September to December 2013, and affirmed the Hearing Officer's determination that the School District offered the twins appropriate IEPs in December 2013. *Sch. Dist. of Philadelphia v. Kirsch*, Civ. A. Nos. 14-4910, 14-4911, 2015 WL 7740667, at \*13, \*17 (E.D. Pa. Nov. 30, 2015) (*Kirsch I*). The District Court also determined that Parents were entitled to tuition reimbursement for A.K. and N.K. at ASUA pursuant to the "stay-put" provision of the IDEA during the pendency of the appeal proceedings. *Id.* at \*18-20. The District Court denied Parents' remaining claims for relief. In a June 1, 2016 memorandum opinion and order, the District Court awarded tuition reimbursement to Parents in the amount of $227,788.68, representing the cost of A.K.'s and N.K.'s basic tuition, ESY services, and transportation costs at ASUA for the 2013-14, 2014-15, and 2015-16 school years, less the amount of scholarships that they had been awarded. *See Sch. Dist. of Philadelphia v. Kirsch*, Civ. A. Nos. 14-4910, 14-4911, 2016 WL 3092082 (June 1, 2016) (*Kirsch II*) (approving and adopting the report and recommendation of the magistrate judge with respect to the amount of tuition reimbursement to be awarded to Parents, *i.e.*, *Sch. Dist. of Philadelphia v. Kirsch*, Civ. A. Nos. 14-4910, 14-4911, 2016 WL 3101964 (E.D. Pa. Apr. 21, 2016)).

On June 28, 2016, the School District appealed both the District Court's November 30, 2015 Memorandum and Order affirming the decisions of the Hearing Officer and the District Court's June 1, 2016 Memorandum and Order. Parents filed cross-appeals of those decisions and Orders on June 30, 2016.[3]

---

[3] The June 28, 2016 appeals and June 30, 2016 cross-appeals are docketed as Nos. 16-3021, 16-3032, 16-3034, and 16-3035.

In the meantime, on June 15, 2016, Parents filed a Motion for Attorneys' Fees and Costs as prevailing parties with respect to their IDEA claim. The District Court granted this Motion on January 11, 2017, and awarded Parents a total of $185,505.63 in attorneys' fees and $3,703.31 in costs. *Sch. Dist. of Philadelphia v. Kirsch*, Civ. A. No. 14-4910, 14-4911, 2017 WL 131808, at *10-11 (E.D. Pa. Jan. 11, 2017) (*Kirsch III*). That sum was divided as follows: $105,199.00 of the attorneys' fees and $2,517.45 in costs was awarded to the Law Offices of Caryl Andrea Oberman (the "Oberman firm"), which firm represented Parents in connection with the administrative proceedings; $80,306.63 of the attorneys' fees and $1,185.86 of the costs were awarded to Reisman Carolla Gran, LLP, which firm represented Parents in connection with the District Court proceedings. *Id.* The School District appealed the Order to this Court on February 3, 2017.

On October 6, 2016, Parents filed a Motion in the District Court to Enforce and for Preliminary Injunction pursuant to 20 U.S.C. § 1415(j), asking the District Court to enter a "stay put" preliminary injunction pursuant to the IDEA and order the School District to pay the twins' basic tuition at ASUA for the 2016-17 school year in the amount of $90,000.00. The District Court granted the Motion on December 6, 2016, ordering the School District to reimburse Parents $90,000.00 for the twins' education costs for the 2016-17 school year. *Sch. Dist. of Philadelphia v. Kirsch*, Civ. A. Nos. 14-4910, 14-4911, 2016

WL 7108443, at *2 (E.D. Pa. Dec. 6, 2016).  The School District appealed that Order to this Court on January 4, 2017.[4]

## III.    DISCUSSION

"In deciding cases brought under the IDEA, district courts apply a modified version of de novo review."  *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 430 (3d Cir. 2013) (citing *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006)). Consequently, while "the District Court must make its own findings by a preponderance of the evidence, it is also required to afford due weight to the factual findings of the hearing officer."  *Id.* (citing *L.E.*, 435 F.3d at 389).  "The 'due weight' standard requires the court to consider the factual findings from the administrative proceedings prima facie correct and, if the court fails to adopt those findings, it must explain its reasons for departing from them."  *Id.* (quoting *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 241 (3d Cir. 2009)).  "We exercise plenary review over the District Court's legal conclusions and review its factual findings for clear error."  *Id.* (citing *L.E.*, 435 F.3d at 389).

### A.    Tuition Reimbursement

#### 1.    The School District's Appeals

The School District contends that the District Court erred when it found that it violated the IDEA and was liable for tuition reimbursement for denying a FAPE to the twins by failing to have finalized IEPs in place for A.K. and N.K. prior to the beginning of

---

[4] The January 4 and February 3, 2017 appeals are docketed as Nos. 17-1037, 17-1038, 17-1284, and 17-1285.

9

the 2013-14 school year.[5] We conduct a two-part inquiry to determine whether the School District is liable for violating the IDEA: "(1) Has the school district complied with the procedures set forth in IDEA?; and (2) Has the school district fulfilled its obligation to provide the student with a FAPE?" *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982)). "A plaintiff who alleges the denial of a FAPE may seek compensatory relief in the form of . . . tuition reimbursement for an appropriate placement in private school." *Id.* (citing *Mary T.*, 575 F.3d at 249). However, a plaintiff who "alleg[es] only that a school district has failed to comply with a procedural requirement of the IDEA, independent of any resulting deprivation of a FAPE, may only seek injunctive relief for prospective compliance." *Id.* (citing *P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 738 (3d Cir. 2009)).

There is no dispute that the School District failed to provide finalized IEPs for A.K. and N.K. prior to the 2013-14 school year. This failure constitutes a procedural violation of the IDEA because the statute requires school districts to have IEPs in effect "[a]t the beginning of each school year." 20 U.S.C. § 1414(d)(2)(A); *see also C.H.*, 606 F.3d at 68.

---

[5] "The IDEA requires states receiving federal education funding to provide every disabled child with a 'free appropriate public education.'" *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012) (quoting 20 U.S.C. § 1412(a)(1)). "A FAPE 'consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child "to benefit" from the instruction.'" *Id.* at 268-69 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982)). The IDEA further requires that: "[a]t the beginning of each school year, each local educational agency . . . shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program . . . ." 20 U.S.C. § 1414(d)(2)(A).

10

However, the School District argues that its failure to provide IEPs for the twins prior to the beginning of the 2013-14 school year did not result in the denial of FAPEs for the twins because it did not result in substantive harm to the twins or Parents. A procedural violation of the IDEA may be considered the denial of a FAPE "entitling the plaintiff to compensatory education or tuition reimbursement . . . 'only if such violation causes substantive harm to the child or his parents.'" *C.H.* 606 F.3d at 66 (quoting *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 765 (6th Cir. 2001) (remaining citations omitted)). Substantive harm exists where the School District's violation of the IDEA "significantly imped[es] the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child." *Id.* at 67 (quoting 34 C.F.R. § 300.513(a)(2)).

The record in this case clearly supports the District Court's determination that the School District "failed to provide parents with important details regarding the proposed classroom for the twins . . . until just before the start of the school year and thus 'significantly impeded [parents'] opportunity to participate in the decision-making process regarding the provision of a FAPE to the' twins." *Kirsch I*, 2015 WL 7740667, at *13 (second alteration in original) (quoting 34 C.F.R. § 300.513(a)(2)). As we discussed above, the School District did not provide Parents with final IEPs for the twins prior to the start of the 2013-14 school year. Moreover, Parents were not notified of the twins' recommended school placement until the AS teacher invited them to the September 11, 2013 kindergarten interview, at which they were given an overview of the program used in the AS classroom. Accordingly, we reject the School District's claim that District Court erred when it found

11

that the School District's failure to have finalized IEPs in place for A.K. and N.K. prior to the beginning of the 2013-14 school year was a denial of a FAPE under the IDEA, making the School District liable for tuition reimbursement.

The School District also contends that the District Court erred when it failed to deny Parents' claim for tuition reimbursement for equitable reasons. Parents are entitled to reimbursement for private school tuition "if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the act." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246 (2009) (quoting *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)). The Hearing Officer and District Court found that the twins' placement at ASUA was appropriate and the School District does not contest that finding. *Kirsch I*, 2015 WL 7740667, at *15. However, the School District maintains that it should not be required to pay the twins' tuition at ASUA because Parents acted unreasonably. "Even where a District is found to be in violation of the IDEA and private school placement is deemed appropriate, 'courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant.'" *C.H.*, 606 F.3d at 71 (quoting *Forest Grove Sch. Dist.*, 557 U.S. at 247). Consequently, "an award of private school tuition 'may be reduced or denied' . . . 'upon a judicial finding of unreasonableness with respect to actions taken by the parents,' or where parents fail to give the school district ten days notice prior to enrolling a child in private school." *Id.* (quoting 20 U.S.C. § 1412(a)(10)(C)(iii)(III), and citing 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb)).

The School District further asserts that the District Court improperly weighed the equities insofar as it ignored Parents' failure to meet their obligation to timely notify the

12

School District prior to removing the twins from the School District and enrolling them at ASUA; disregarded that parents created ASUA in lieu of working with the School District to develop appropriate IEPs; and applied the wrong legal standard to Parents' conduct. The District Court considered these arguments and found that the School District failed to satisfy its burden of persuasion as to this issue. *See Kirsch I*, 2015 WL 7740667, at \*11-13. We conclude, based upon the record, that the District Court did not abuse its discretion in this regard.

The record establishes that Parents complied with their obligation to give the School District ten days' notice prior to enrolling the twins at ASUA. *See* 20 U.S.C. § 1412(a)(10)(C)(iii)(I)(bb). On August 20, 2013, Parents notified the School District by hand-delivered letter that they would enroll the twins in private school within ten days and seek tuition reimbursement from the School District. Parents enrolled the twins at ASUA on September 5, 2013, more than ten days later.

The record also contradicts the School District's assertion that Parents acted unreasonably in failing to work together with the School District to develop appropriate IEPs for the twins because they preferred to place the twins at ASUA. The School District insists that it did not finalize the IEPs prior to the beginning of the 2013-14 school year because Parents refused to review the School District's draft IEPs or attend follow-up meetings. However, the record shows that Parents attended the June 20, 2013 IEP meeting and that Misher offered to attend another IEP meeting the next day, but the School District did not hold one. The School District told Parents that they could revise the draft IEPs over the summer by email, but then failed to substantively respond to the Parents' follow-

13

up emails. During Parents' September 11, 2011 meeting with the teacher in the AS classroom in which the twins were to be placed, Parents were given new copies of the draft IEPs from June 20, 2013, along with NOREPs for the twins. Parents rejected the NOREPs because they had concerns about the proposed IEPs, although they continued to work with the School District to develop IEPs for the twins. The School District did not invite Parents to another IEP meeting until October 9, 2013, after the 2013-14 school year had begun. Thus, the record simply does not support a conclusion that Parents failed to work together with the School District as the School District contends.

The School District's argument that the District Court applied the wrong legal standard to its assessment of Parents' conduct is similarly unsupported. The School District contends that both the Hearing Officer and the District Court improperly required it to prove that Parents' actions were "deceptive or otherwise unethical" rather than merely unreasonable.[6] However, the Hearing Officer did not use a standard other than reasonableness to determine whether the equities required a reduction in the amount of tuition reimbursement. Rather, it is clear from a review of the Hearing Officer's Decisions that she examined whether the record showed that Parents acted unreasonably, and she

---

[6] This quoted phrase appears in the Hearing Officer's analysis of the School District's examination of Parents' witnesses. The Hearing Officer stated that "[t]he theme of the District's examination of Parents' witnesses . . . was that Parents' actions in seeking a public school placement while attempting to start the private school Student[s] currently attend[] were so pervasively inequitable as to relieve the District of all obligations to Student[s]." App. 192a, 218a. The Hearing Officer concluded that the factual record did not "support a conclusion that Parents' actions were deceptive or otherwise unethical." *Id.* Thus, the Hearing Officer's discussion of deceptive or unethical conduct was merely in response to the School District's argument that Parents' conduct was not only unreasonable, but also "pervasively inequitable."

14

found that it did not. In fact, she found that Parents' conduct in founding a private school to educate children with certain disabilities, and enrolling their own children in that school, was "not substantively different from the usual situation of dissatisfied . . . parents exploring potential private placements." App. 193a, 219a. She further found "no evidence that Parents were committed to sending [the twins] to the private school between February and June 2013, when Parents first contacted the District, [and] the District was [evaluating the twins] and developing . . . draft IEP[s]." *Id.* 193a-94a, 219a. Thus, the Hearing Officer plainly considered the reasonableness of Parents' conduct in concluding that there was "no equitable basis for denying or reducing tuition reimbursement based on Parents' actions" from February 2013 through the date in August 2013 when they were notified of the twins' classroom assignment. App. 194a, 220a. There is, moreover, nothing in the District Court's decision to indicate that it applied a standard other than reasonableness to Parents' conduct, as it simply concluded that "[g]iving due weight to the Hearing Officer's findings, and after a review of the record, I find no reason to reject them." *Kirsch I*, 2015 WL 7740667, at *16 (citation omitted). Consequently, we reject the School District's argument that the District Court applied the wrong legal standard in denying the School District's claim that Parents' unreasonable conduct relieved it of liability for tuition reimbursement.

Accordingly, the District Court did not abuse its discretion or otherwise err when it rejected the School District's argument that it should deny tuition reimbursement for the twins because the balance of the equities weighed in favor of the School District.

The School District also argues that the District Court erred in its June 1, 2016 decision awarding tuition reimbursement to Parents because that award included ESY

15

services, which the Hearing Officer had not considered.[7]  The IDEA's implementing regulations provide that "[e]xtended school year services must be provided only if a child's IEP Team determines, on an individual basis . . . that the services are necessary for the provision of FAPE to the child."  34 C.F.R. § 300.106(a)(2).  In this case, the School District's IEP team determined that the twins were both entitled to ESY services of 20 hours per week over eight weeks in July and August 2014.  *See Kirsch II*, 2016 WL 3092082, at *2 (citation omitted).  Moreover, "once a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.'"  *Carter*, 510 U.S. at 15-16 (quoting 20 U.S.C. § 1415(e)(2)).  "Under this provision, 'equitable considerations are relevant in fashioning relief,' and the court enjoys 'broad discretion' in so doing."  *Id.* at 16 (quoting *Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369, 374 (1985)).  Under these circumstances, we conclude that the District Court did not abuse its discretion in awarding tuition reimbursement for ESY services, and we reject the School District's claim to the contrary.

The School District further argues that the District Court erred in its December 6, 2016 Memorandum and Order granting basic tuition reimbursement in the amount of $90,000.00 for the twins' education costs for the 2016-17 school year because that decision was grounded on the District Court's November 30, 2015 determination that the School District failed to offer a timely FAPE to the twins in the Fall of 2013 (the "FAPE

---

[7] The Hearing Officer did not consider ESY services because she concluded that Parents' entitlement to tuition reimbursement terminated in December 2013 and the ESY services in question were provided to the twins after December 2013.

Determination"). The School District asserts that, if we find that the District Court's FAPE

Determination was erroneous, we should also reverse the award of tuition reimbursement

for the 2016-2017 school year. However, as we discussed at length above, we are affirming

the District Court's FAPE Determination. Consequently, we reject the School District's

claim that we should reverse the District Court's award of basic tuition for the twins for

the 2016-2017 school year because the FAPE Determination was erroneous.[8]

## 2. Parents' Cross-Appeals

Parents claim that the Hearing Officer and District Court erred as a matter of law in

denying their request for tuition reimbursement for 1:1 aides as well as occupational and

speech/language therapy services beyond those services included in ASUA's basic tuition.

The Hearing Officer denied reimbursement for services outside of those included in the

private school's basic tuition because she concluded that "[i]t is not the District's

responsibility to pay extra costs that Parents had to incur to make the private school

appropriate. It is sufficient that Parents were reimbursed for the educational program and

the related services it included." App. 196a, 222a.

The Hearing Officer is incorrect. Parents are entitled to "restitution under the IDEA

for out-of-pocket expenses that the school district 'should have paid all along and would

have borne in the first instance had it developed a proper IEP.'" *Chambers ex rel.*

---

[8] Parents filed a Motion for Summary Action pursuant to L.A.R. 27.4, asking that we dismiss the School District's appeal of the order awarding 2016-2017 tuition reimbursement. This Court referred the Motion to the merits panel. Because we have determined that the School District is not entitled to reversal of the 2016-2017 tuition reimbursement order since it has not established that the District Court erred in its FAPE Determination, we will deny Parents' Motion for Summary Action as moot.

*Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 184 (3d Cir. 2009) (footnote omitted) (quoting *Burlington*, 471 U.S. at 371, and citing *Florence Cnty.*, 510 U.S. at 12). The final IEPs prepared by the School District in December 2013, which the Hearing Officer found to be appropriate, included the provision of the following services for each twin: speech/language therapy of 15 hours per year; 1:1 assistant for 35 hours per week; and occupational therapy of 10 hours per year. The twins' basic tuition at ASUA included two hours of speech therapy and one hour of occupational therapy per week, which exceeds the speech/language and occupational therapy required by the twins' December 2013 IEPs. Therefore, Parents are not entitled to additional reimbursement for those services. However, the basic tuition at ASUA did not include any services provided by a 1:1 aide. The School District has recognized that it has an obligation under the IDEA to provide the twins with the services of a 1:1 aide for 35 hours per week, as those services were authorized by the School District's IEP team and included in the twins' IEPs. Thus, Parents are entitled to restitution under the IDEA for the out-of-pocket expenses they incurred for the services of 1:1 aides for the twins at ASUA. *See Chambers*, 587 F.3d at 184 (quotation and citations omitted).

We conclude, accordingly, that the Hearing Officer erred as a matter of law by denying Parents' request for reimbursement of their out-of-pocket expenses for 1:1 aides for the twins. As the District Court likewise did not grant reimbursement for these expenses in any of its three Orders granting tuition reimbursement, we vacate the November 30, 2015, June 1, 2016, and December 6, 2016 Orders of the District Court and remand to the District Court with an instruction to add reimbursement of Parents' out-of-pocket expenses

18

for 1:1 aides for the twins to its award of reimbursement for the twins' basic tuition and transportation as follows: $11,000.00 for a 1:1 instructional aide for A.K. for the 2013-14 school year; $11,000.00 for a 1:1 instructional aide for N.K. for the 2013-14 school year; $15,000.00 for a 1:1 instructional aide for A.K. for the 2014-15 school year; $15,000.00 for a 1:1 instructional aide for N.K. for the 2014-15 school year; $18,000.00 for a 1:1 instructional aide for A.K. for the 2015-16 school year; $18,000.00 for a 1:1 instructional aide for N.K. for the 2015-2016 school year; and an amount to be determined by the District Court for 1:1 instructional aides for A.K. and N.K. for the 2016-17 school year.

Parents also claim that the District Court erred as a matter of law by failing to explicitly reject the Hearing Officer's determination that, under the IDEA, a School District's proposal of an appropriate IEP after a school year has begun can provide a basis for the mid-year termination of tuition reimbursement. Parents emphasize that 20 U.S.C. § 1412(a)(10)(C)(iii) lists only three permissible grounds for limiting tuition reimbursement, and none of these grounds is the offer of a FAPE after the school year has begun.[9] However, in spite of the District Court's approval of the Hearing Officer's determination that the School District offered appropriate IEPs for A.K. and N.K. in December 2013, the District Court, unlike the Hearing Officer, did not rely on that finding

_____

[9] Section 1412(a)(10)(C)(iii) provides that tuition reimbursement "may be reduced or denied" if parents did not timely inform the IEP team that they were rejecting the NOREP and sought to "enroll their child in a private school at public expense;" parents failed to timely inform the school district that they intended to enroll their child in private school; parents failed to make their child available for evaluation by the school district; or parents' actions were unreasonable. 20 U.S.C. § 1412(a)(10)(C)(iii).

19

to limit tuition reimbursement. Rather, the District Court awarded tuition reimbursement for A.K. and N.K. at ASUA for the entire 2013-14 school year pursuant to the stay-put provision of the IDEA, 20 U.S.C. § 1415(j).[10] *Kirsch*, 2015 WL 7740667, at *17-18. Thus, any error in the District Court's failure to specifically address and reject the Hearing Officer's rationale for concluding that Parents were not entitled to tuition reimbursement after December 2013 was harmless, and we need not reach the issue here. *See* Fed. R. Civ. P. 61; *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 328-29 (3d Cir. 2001).

Parents also argue that the District Court erred in granting summary judgment in favor of the School District with respect to their counterclaims of discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").[11] The relief Parents seek, tuition reimbursement, is identical to the relief they seek in their IDEA claim. Specifically, Parents argue that if they are not entitled to reimbursement for all of the twins' educational expenses under the IDEA, they are entitled to full reimbursement under the ADA and Section 504. Both the ADA and Section 504 require successful claimants to establish that

---

[10] The stay-put provision of the IDEA provides that "[e]xcept as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j). The School District does not appeal the application of the stay-put provision here.

[11] "We exercise plenary review over a district court order granting summary judgment." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 (3d Cir. 1998)). "Accordingly, we engage in the same analysis as the district court initially applied." *Id.* (citing *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 246 (3d Cir. 2002)).

"(1) they are handicapped or disabled as defined under the statutes; (2) they are otherwise qualified to participate in the program at issue; and (3) they were precluded from participating in a program or receiving a service or benefit because of their disability." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) (citing *Chambers*, 587 F.3d at 189). The District Court granted the School District's Motion for Summary Judgment with respect to Parents' ADA and Section 504 claims for tuition reimbursement because Parents failed to show that the School District intentionally discriminated against the twins. *Kirsch I*, 2015 WL 7740667, at *21 (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012)).

Parents argue that the District Court erred as a matter of law in resolving these counterclaims because, in requiring them to establish intentional discrimination on the part of the School District, the District Court applied the wrong legal standard. "All courts of appeals that have considered this issue have held that compensatory damages are not available under § 504 of the RA and § 202 of the ADA absent intentional discrimination." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013) (citing *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011)) (additional citations omitted). Deliberate indifference satisfies the intentional discrimination standard. *See id.* at 264-65. "However, 'deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction.'" *Id.* at 263 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009)).

Parents contend that the District Court erred in applying the deliberate indifference standard to their ADA and Section 504 claims because their request for tuition

21

reimbursement under those statutes is not a request for compensatory damages but, rather, is a request for equitable relief. However, Parents fail to articulate why reimbursement for money they have paid constitutes equitable relief rather than compensatory damages. In essence, tuition reimbursement compensates parents for education expenses. Thus it is properly classified as compensatory damage relief. Consequently, we conclude that the District Court did not err as a matter of law in applying the intentional discrimination standard to the ADA and Section 504 claims.

Parents also argue that the District Court erred in granting summary judgment in favor of the School District with respect to their ADA and Section 504 claims when, in their view, the evidence of record supports a finding that the School District acted with deliberate indifference in failing to work diligently with them to "ensure [the twins'] meaningful participation in educational activities and meaningful access to educational benefits." *Ridley*, 680 F.3d at 280 (stating that an "appropriate" education under Section 504 is one that meets this standard (citations omitted)). Parents rely on evidence that the School District failed to notify them that it did not meet with parents during the summer and that no one responded to their emails regarding the twins' IEPs.[12] However, as noted above, "deliberate indifference must be a 'deliberate choice, rather than negligence or bureaucratic inaction.'" *S.H.*, 729 F.3d at 263 (quoting *Loeffler*, 582 F.3d at 276). Parents

---

[12] Parents also assert that the School District did not coordinate with the twins' EI therapists and behaviorist to ensure that it had the appropriate programs in place for the twins prior to the start of the 2013-14 school year. However, there is record evidence that the School District did coordinate with the twins' behavioral specialist, who attended the June 20, 2013 IEP meeting.

have not presented any record evidence that the School District's failure to make them aware of its policy not to meet in the summer regarding IEPs or its failure to respond to emails during the summer break was a deliberate choice rather than negligence or bureaucratic inaction. Accordingly, we conclude that the District Court did not err in finding that "the standard for deliberate indifference has not been met in these cases." *Kirsch I*, 2015 WL 7740667, at *21.

## B.    Attorneys' Fees

The School District argues that we should reverse the District Court's January 11, 2017 Order awarding attorneys' fees and costs on the grounds that the District Court erred by (1) failing to properly adjust counsels' requested hourly rates even though it found that Parents had failed to satisfy their burden of proving that those rates were reasonable; and (2) failing to reduce Parents' attorneys' lodestar for lack of success.[13]  "[W]e review attorneys' fees rulings for abuse of discretion."  *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 223 (3d Cir. 2017) (citing *Raab v. City of Ocean City,* 833 F.3d 286, 292 (3d Cir. 2016)). "An abuse of discretion occurs when a district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  *Raab*, 833 F.3d at 292 (quoting *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852

---

[13] The School District also asserts that we should reverse the January 11, 2017 Order awarding attorneys' fees and costs because it is grounded on the FAPE Determination, which the School District contends was erroneous.  However, as we are affirming the District Court's FAPE Determination, we reject the School District's claim that we should reverse the District Court's award of attorneys' fees and costs on this basis.

23

(3d Cir. 2006)).  However, "our review is plenary where . . . the district court based its denial on legal conclusions."  *M.R.*, 868 F.3d at 223 (citing *Raab*, 833 F.3d at 292).

The IDEA provides that courts may "award attorneys' fees to a 'prevailing party.'" *M.R.*, 868 F.3d at 224 (quoting 20 U.S.C. § 1415(i)(3)(B)(i)).  The fees awarded under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C). The lodestar formula is used to determine the reasonableness of attorneys' fees, "which requires multiplying the number of hours reasonably expended by a reasonable hourly rate."  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citations omitted).

The School District contends that the District Court failed to sufficiently reduce Parents' requested attorneys' fees after finding that Parents' proof was insufficient to establish the reasonableness of the requested hourly rates.  The IDEA provides that a court may reduce the attorneys' fees awarded to a prevailing party if "the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience."  20 U.S.C. § 1415(i)(3)(F)(ii).  "The prevailing party 'bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits . . . that the requested hourly rates meet this standard.'" *Maldonado*, 256 F.3d at 184 (alterations in original) (quoting *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996)).  "The starting point in ascertaining a reasonable hourly rate 'is the attorney's usual billing rate, but this is not

dispositive.'" *Id.* at 184-85 (quoting *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)).

The District Court found that the proof submitted by Parents was insufficient to establish that their attorneys' hourly rates were reasonable because the record contained no evidence of the rates that Parents' attorneys actually charged to paying clients or of actual rates charged by lawyers of similar skill for similar services. *Kirsch III*, 2017 WL 131808, at *5. However, the District Court also concluded that the record contained sufficient evidence, submitted by both parties, as to the reasonable rates for counsel of similar skill providing similar services, and it thereby determined that "slight reductions in the hourly rates charged by parents' attorneys . . . [would] make them reasonable." *Id.* at *6 and n.8. Specifically, the District Court relied on declarations submitted by Parents' attorneys, declarations submitted by special education lawyers retained by both Parents and the School District to opine about the reasonableness of the requested fees, the 2014 Community Legal Services fee schedule, and evidence of attorneys' fees awarded in other cases. *Id.* at *3-6. Based on this record evidence, the District Court reduced the hourly rates requested by counsel by between 4% and 24%. *Id.* at *3, *6.

Given the evidence on which it relied, we conclude that the District Court did not abuse its discretion in awarding attorneys' fees to Parents that only slightly reduced the attorneys' requested hourly rates and did not more dramatically reduce the hourly rates as the School District asserts was required. *See* 20 U.S.C. § 1415(i)(3)(F)(ii); *see also Maldonado*, 256 F.3d at 187-88 (citation omitted) (noting that the CLS fee schedule is

25

"well developed" and "reasonable in fixing the hourly rates" charged in civil rights actions in Philadelphia).

The School District also claims that the District Court abused its discretion in failing to reduce the attorneys' fees lodestar for the Oberman firm to reflect Parents' unsuccessful claims. We may adjust a requested legal fee downward based upon the results obtained by counsel for the prevailing party, particularly "where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In this situation, we consider whether, notwithstanding his unsuccessful claims, "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* As the Supreme Court explained in *Hensley*, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . [and] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435 (citation omitted).

The Oberman firm represented Parents before the Hearing Officer and was unsuccessful with respect to Parents' claim that the School District failed to provide a FAPE for the twins after December 2013. The Oberman firm did not reduce its fee request to account for that lack of success and the District Court declined to reduce its award of fees to the Oberman firm on this basis.[14] The District Court explained that the Oberman firm "achieved significant success at the administrative level on behalf of both A.K. and

---

[14]The District Court did reduce the hours requested by the Oberman firm by 151.7 hours due to duplication. *Kirsch V*, 2017 WL 131808 at *7.

26

N.K." in that "the Hearing Officer found that the District denied A.K. and N.K. a FAPE from the start of the 2013-14 school year through December 2013 and also determined that ASUA was an appropriate private placement for A.K. and N.K." *Kirsch III*, 2017 WL 131808, at *9. The District Court further noted that this determination was critical to its finding that the School District was "obligated to continue to fund the twins' education at ASUA through the exhaustion of all appeals." *Id.* We conclude, under these circumstances, that the District Court's decision not to reduce the Oberman firm's fees to reflect its lack of complete success was not an abuse of discretion and we reject the School District's claim with respect to this issue. *See Hensley*, 461 U.S. at 435.

## IV. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the District Court as to Parents' claim for tuition reimbursement for 1:1 aides for the twins for the 2013-14 through 2016-17 school years and remand to the District Court to enter judgment for Parents as set forth in the June 1, 2016 Order, with the addition of $88,000.00 for tuition reimbursement for 1:1 aides for the twins for the 2013-14 through 2015-16 school years and an amount to be determined by the District Court for the 2016-17 school year. Accordingly, we will vacate the District Court's Orders dated November 30, 2015, June 1, 2016 and December 6, 2016. We will affirm the judgment of the District Court in all other respects.